[Civ. No. 11551. Second Appellate District, Division One.—December 23, 1938.]

STANLEY KARWOSKI, Respondent, v. VINCENT GRANT et al., Appellants.

Edgar H. Craddock, Edward J. Cotter and Arch G. McLay for Appellants.

Crail, Crail, Crail & Wright and J. Marion Wright for Respondent.

WHITE, J.—This is an appeal from a judgment in favor of the plaintiff in an action for damages resulting from a collision between a passenger-carrying bus owned by one of the defendants and driven by another of the defendants, and a motorcycle owned and driven by Benedict Karwoski, minor son of the plaintiff, and in which accident the minor son was fatally injured. The cause was tried before a jury, which returned a verdict in plaintiff's favor for $15,000. On hearing of the motion for a new trial the court directed that such motion be granted unless plaintiff filed a written consent to a reduction of the amount of the judgment from $15,000 to $5,000. The plaintiff having filed a consent to such remission, the motion for new trial was denied; and from such judgment, so reduced to said amount of $5,000, defendants prosecute this appeal.

Since appellants raise no question as to the sufficiency of the evidence to sustain the judgment, except indirectly with respect to the amount of the damages, we deem it unnecessary to set forth the facts concerning the accident itself, but in order to consider the points raised on this appeal a recital of the following facts will prove helpful: The deceased minor son was twenty years, ten months and seventeen days old at the time of his death. He was one of seven children, of whom plaintiff was the father. Benedict always lived at home before enlisting in the United States Navy in November, 1934. He had attended public schools in Superior, Wisconsin, and graduated from high school, following which he attended Superior State Teachers' College for one year, shortly thereafter entering the navy. He had attended a twelve-weeks' training school after entering the navy, and an electrical class in the navy for three months, from which class he had graduated with the award of honor student of his class. The evidence indicates that he was in good health, never having been sick, and was kind, loving, and thoughtful of his parents. Out of his rather meager pay, which he received during his first fourteen months in the navy, he had sent home five dollars on three occasions, two dollars once, and also had made three payments of ten dollars each and one of fifteen dollars to help his father pay off the mortgage on their home in Superior, Wisconsin;

while at Christmas time he had sent gifts to each member of the family. In June, 1935, Benedict obtained a leave of absence from the navy, and during his vacation visited his family in Superior.

█ Appellants' first contention is that the conduct of the trial judge influenced the jury in its verdict to the detriment and the prejudice of defendants. In support of this claim appellants direct our attention to the fact that the jury returned a verdict in three times the amount finally allowed by the court, and which verdict the court, in its minute order directing the remission, stated was given under the influence of passion and prejudice. To say that a verdict has been influenced by passion and prejudice is but another way of saying that the verdict exceeds any amount justified by the evidence. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 254 [116 Pac. 513].) In the case at bar we cannot say, for reasons to be hereinafter given, that the reduced judgment for $5,000 under all the circumstances of this case is in any way disproportionate to the damage suffered.

█ In further support of the claimed prejudicial misconduct on the part of the trial court, we are directed to the actions of the judge while defendant Vincent Grant was upon the witness stand, at which time the following took place:

"Q. Then you go to Seventh— A. Then when we stop on Sixth we shift and we keep in third gear.

"Q. Wait a minute. I don't know what you did—

"Mr. Cotter: Just a moment. You have asked him what his course was, and he is telling you how he went.

"The Witness: How we go about it.

"The Court: I am sorry, Mr. Witness. You don't need to argue it. Objection sustained.

"The Witness: All right.

"The Court: The witness is volunteering something he did. He is only asked the course he took. . . .

"Q. What gear were you in? A. Well, we have four speeds.

"Q. Which one were you in? A. Third gear. I want to explain.

"The Court: Don't explain. Just answer the question. . . .

"Q. No. Did you stop? A. Well, there is no stop. Why should I?

"The Court: Did you stop your bus or keep going? A. No.

"The Court: Please answer his question. . . .

"Q. What was your first knowledge of the accident? A. Well, didn't he object to it?

"The Court: The Court is ruling on it. You don't need to rule on it. Go ahead and answer. . . .

"Q. (By Mr. Wright) Now, you didn't ever see this motorcycle at all, did you, until after you came to a stop? . . . A. Well, the only time I saw him was when he was about right on top of me, then I couldn't do nothing.

"Q. (By the Court) Was he up on the roof? A. Well, right on top of that wheel.

"Q. What do you mean? On top of the wheel? A. Well, about two feet from the wheel when he just started hitting me."

On another occasion during the examination of this witness the court said, "You wouldn't be shoved sideways by the motorcycle, would you, a distance of eight feet?"

On another occasion, plaintiff's counsel asked the witness:

"Q. While you were in the bus, after you felt the impact on your front hub, did you see the motorcycle? A. What a silly question! How could you see the motorcycle when you are in a big bus?

"The Court: Now, Mr. Grant, I will have to fine you for contempt. I can't permit anything like this. You are not entitled to make any comment here. You are assessed a fine of ten dollars. Now, just remember, young man, your sole role here is to answer questions and tell the truth."

"The Witness: That is what I am trying to do.

"The Court: You have no right to make any comment on the questions of counsel or anything else.

"The Witness: That is what I am trying to do.

"The Court: Now, don't let me hear anything like that again. Now, his question was an exceedingly simple one: Did you see the motorcycle after you felt the impact? I suppose you may have seen the motor after you got out of the bus, you may have seen it before you left the bus, we don't know. You are the only one that can tell.

"The Witness: I didn't see it.

"The Court: You never saw the motorcycle? A. After the impact I didn't see it.

"The Court: You never saw it again? A. No.

"The Court: All right, answer it directly right to the point. . . .

"Q. (By Counsel) All right. Now, after you got out did you then look at the motorcycle? A. Yes, I did.

"The Court: I am sorry. I understood you to say a moment ago you never saw the motorcycle. A. When he hit, of course.

"The Court: Nobody asked you that. I asked you very carefully, did you see it at any time. His question meant, did you see the motorcycle after the collision?

"The Witness: I must have misunderstood your Honor.

"The Court: Well, you certainly have an exceedingly bad understanding. That is an exceedingly clear question. I termed it so you would understand it.

"The Witness: I thought he meant before the impact.

"The Court: You listen to the question and answer the question only. Don't imagine some questions. Another thing I would like to ask, I understood you to say a moment ago you were out of the bus in thirty seconds. A. Yes, sir.

"Q. And the young man had been removed during that thirty seconds? A. Yes sir.

"Q. You didn't see him at all? A. No sir, I didn't."

Appellants urge that this line of questioning and the manner in which the court framed questions to the witness would clearly indicate to the jury that the court did not believe the witness, and that when taken together with the fine for contempt which the court in the presence of the jury imposed upon the witness, together with the court's admonition to the witness "to tell the truth", that "it is not difficult to understand a $15,000 verdict against the witness by the jury".

During the presence of other witnesses upon the stand the court took a very active part in their interrogation. At no time throughout the trial did counsel make any objection to the charged misconduct of the trial court, which failure upon their part to make timely objection and afford the court an opportunity to admonish the jury in the premises appellants seek to excuse upon the ground that they are "satisfied that in the present case such a warning would have been useless".

■ It needs no citation to convince any unbiased observer that a jury has both ears and eyes open for any little word or act of the trial judge from which they may gather enough

178

to read his mind and get his opinion of the merits of the issues under investigation. Trial judges therefore would better leave any interrogation of witnesses upon their part until the conclusion of the examination by counsel—direct, cross, redirect and recross, and then, if anything, in the judgment of the trial court, remains obscure, which may be material for the jury to know, and it seems desirable that an examination of the witness should be further pressed, then the trial judge may, and indeed should, intervene, so that the ends of justice may be subserved. ■ An examination of the cases decided since the amendment of section 19, article VI, of the California Constitution, which engrafted a new rule of procedure on the jurisprudence of this state, permitting the court to single out an individual witness and comment upon his testimony, which power the court did not possess prior to such amendment, leads us to the conclusion that the procedure adopted in the instant case may not be held to indicate a prejudiced mind upon the part of the court or unfairness toward these appellants. The arrogance, if not contemptuous and disorderly conduct upon the part of one of the appellants while on the stand merited the stern rebuke administered by the court through the imposition of a fine, while the uncertainty, evasiveness or reluctance of other witnesses warranted the court's intervention in their examination, though the court's interrogation in some instances might well have been deferred until respective counsel had completed their examination. In the face of the record here, we perceive no misconduct on the part of the judge. ■ Apparently at the trial appellants found no fault with the court's conduct, because no objection or exception to such conduct was reserved by appellants. The question of prejudice on the part of the trial judge is raised for the first time on appeal. In order to avail themselves of the benefit of alleged prejudicial utterances or conduct of a trial judge, exception to the remarks or an assignment of misconduct must be reserved during the process of the trial. (*Compton-Gardena Milling Co.* v. *McCartney,* 69 Cal. App. 708 [231 Pac. 764]; *Franceschi* v. *Nardi,* 77 Cal. App. 78 [246 Pac. 130]; *Ledgerwood* v. *Ledgerwood,* 114 Cal. App. 538 [300 Pac. 144].) An examination of the entire record before us does not show a persistent course of conduct on the part of the trial judge from which it is apparent that objection would have been useless or that

the acts complained of are of such a character that no admonition to the jury would have removed their effect, if any, and it is only in the last-named instances that the absence of an assignment of error during the trial will not preclude one from raising the point on appeal. The present case does not come within the exception. It is particularly the duty of counsel, by timely objection, to call the court's attention to the evident impropriety of questions propounded by, or conduct on the part of, the trial court. Otherwise it would be possible to refrain intentionally from making objections or reserving exceptions in order to lay ground for reversal.

 Appellants next complain that an award of damages in the sum of $5,000 for the wrongful death of plaintiff's twenty-year-old son, who had enlisted in the United States Navy fourteen months prior to his death, and whose term of enlistment would not expire until after he had reached his majority, is excessive. Two reasons are urged for this contention: (1) that the earnings of the deceased and the contributions made by him to his parents up to the time of his death, if capitalized at four per cent, would not amount to $5,000, and (2) that deceased, by reason of his enlistment in the navy, had become "emancipated", and since the term of his enlistment would extend beyond the period of his minority, he was under no obligation whatsoever to the plaintiff; and further, that by reason of the plaintiff's consent to the enlistment the question of loss of society, comfort and protection was removed from the jury's consideration. The pecuniary loss referred to in section 377 of the Code of Civil Procedure may be either a loss arising from deprivation of something to which the heirs mentioned therein would have been legally entitled if the person had lived, or a loss arising from a deprivation of benefits which, from all the circumstances of the particular case, it could be *reasonably expected* such heirs would have received from the deceased had his life not been taken, although the obligation resting upon him to bestow such benefits on them may have been a moral obligation only. It is to be noted that a reasonable expectation might well exist, though from the father's not being in need the son had never done anything substantial for him. In the instant case it was alleged and established that the minor son had practically arrived at manhood, was strong and robust, and that he had helped by contribu-

tion from his wages in the maintenance of his parents' home and in the liquidation of a mortgage thereon. The early training of the minor son, his contributions to his parents, his visit with them during vacation after he had enlisted in the navy, were all circumstances tending to establish a reasonable probability that the same conditions would have continued for some time after he became of age; and the jury had a right to assume that the contributions of this minor son for the benefit of his parents would increase in amounts as his earning capacity increased, and that the society and comfort as well as the pecuniary contributions that his parents had the reasonable right to expect under the circumstances would continue for the full period of the expectancy of life common to the deceased minor and his parents. Reviewing the decisions of the appellate courts of this state in similar cases, we cannot hold as a matter of law that the sum of $5,000 in damages is excessive. (See *Hill* v. *Peres*, 136 Cal. App. 144 [28 Pac. (2d) 944]; *O'Meara* v. *Haiden*, 204 Cal. 354 [268 Pac. 334, 60 A. L. R. 1381]; *Lahey* v. *Southern Pac. Co.*, 16 Cal. App. (2d) 652 [61 Pac. (2d) 461]; *Jensen* v. *Hansen*, 12 Cal. App. (2d) 678 [55 Pac. (2d) 1201]; *Frazzini* v. *Cable*, 114 Cal. App. 444 [300 Pac. 121]; *Gallentine* v. *Fierro*, 110 Cal. App. 345 [294 Pac. 59].) ■ Under the facts and circumstances before us, the amount of damages finally awarded cannot be said to be so outrageously excessive as to suggest at the first blush passion, prejudice or corruption, and therefore cannot be set aside on appeal. (*Connor* v. *Henderson*, 108 Cal. App. 237, 242 [291 Pac. 641].)

■ In urging that the "emancipation" of the minor forecloses the father from recovery, appellants adopt the erroneous assumption that the parents' right of action must be based upon a *legal right* to the earnings of the child rather than upon the correct premise that the cause of action is based upon the reasonable expectation of the parent (or heir) to pecuniary benefit from the continuance of the life of the minor. Appellants' main argument in regard thereto is that inasmuch as the right of action for the injury or death of a minor is given only to the person who by other statutory provisions is entitled to its earnings or services during minority, the conclusion must follow that the recovery was intended to be limited to the value of such services and earnings calculated for the remaining period of minority only, and that the

"emancipation" of the minor son in the instant case, continuing up to the time of his majority, the parent cannot recover. Commenting upon a similar contention in *Bond* v. *United Railroads of San Francisco,* 159 Cal. 270, at page 281 [113 Pac. 366, Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687], our Supreme Court said:

" . . . These discriminations, it is argued, show the legislative intent to limit the right of recovery of the parent, suing as such, to that to which he would have been legally entitled if the child had lived, and of which the untimely death deprived him, that is, the child's earnings and services during the residue of its minority. We regard these anomalies as mere evidence of careless legislation. . . . In neither alternative is the absurdity sufficient to overcome the fact that the *same rule of damages is fixed for all cases*" (i. e., deaths of infants or of adults) "*and that it is stated in terms which have an obvious meaning, well established, extending the recovery to the reasonable expectation of precuniary benefit from the continuance of the life, after as well as before majority.*" (Emphasis added.)

The jury here was entitled to determine plaintiff's right to damages under the rule of reasonable expectation of pecuniary benefits during the lifetime expectancy of the minor son regardless of his age, rather than under the rule of "majority" or "emancipation". The question of the minor's close proximity to his majority or his "emancipation" is entirely beside the point here involved.

Finally, appellants assert error on the part of the trial judge in the giving of an erroneous instruction to the effect that the father was legally bound to provide for, maintain, clothe and educate his minor son during his minority, and to receive his earnings. The prejudice, if any, contained in this instruction militated against respondent more than appellants. We have, however, carefully examined all the instructions given, and see no prejudicial error therein.

For the foregoing reasons the judgment is affirmed.

York, P. J., and Doran, J., concurred.