[Civ. No. 23983.   First Dist., Div. One.   July 17, 1968.]

ELMA C. SWAILS, Plaintiff and Respondent, v. GENERAL ELECTRIC COMPANY, Defendant and Appellant.

Popelka, Graham, Hanifin, Van Loucks & Allard and Bernard J. Allard for Defendant and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Respondent.

ELKINGTON, J.—General Electric Company appeals from a judgment in the amount of $35,000 entered in favor of plaintiff and respondent, Elma C. Swails, after a jury trial. The action was brought by plaintiff for damages for the wrongful death of her son.

Defendant, as permitted by rule 4(b), Rules on Appeal, takes this appeal on a partial transcript of the oral proceedings below. However, there has been no compliance with the provision of that rule requiring the appellant in his notice to the clerk to state, "the points to be raised by him on appeal. . . ."[1] Accordingly, if the rule were to be here followed, defendant would be precluded from presenting any grounds for reversal of the judgment below.

---

[1]Rule 4(b) in part provides: "If the appellant, in his notice to the clerk, states the points to be raised by him on the appeal, he may designate the portions of the oral proceedings to be transcribed, or direct the omission of any portions which he deems unnecessary, and in such event shall be precluded from presenting any grounds for reversal not embraced within the points stated by him, unless the reviewing court on motion shall permit the appellant to present additional errors or grounds of appeal on such terms as it may prescribe."

Defendant's failure to comply with rule 4(b) is compounded by repeated unsupported statements in its brief. We are given the substance of testimony of witnesses and of conferences in the trial judge's chambers which cannot be found in the record. The brief speaks of "improper and objectionable offers of proof" which we cannot find. Although it states that certain evidence must be taken as uncontradicted because there was "no evidence to the contrary," we have no means of determining the correctness of this assertion. Plaintiff, however, although pointing out the noncompliance with rule 4(b), has not moved to dismiss the appeal, nor does she ask that the rule's sanction be otherwise applied. We shall therefore determine defendant's appeal on its merits.

It appears that plaintiff's unmarried 33-year-old son, Mervin Ratley, was employed as a steel fabricator. His employer had a contract to move some metal partitions at one of defendant General Electric Company's warehouses. The work involved the cutting of metal by an acetylene torch. Ratley and one Cecil Hale were sent to the plant. They were accompanied by defendant's employee, Mr. Butler, who was in charge of relocating the partitions. Butler testified that it was normal procedure to have a fire extinguisher handy when using an acetylene torch. He said that defendant customarily furnished such extinguishers if a contractor working in its buildings did not have them. He also testified that in the plant's storeroom there had been two fire extinguishers. They looked like normal fire extinguishers; there was nothing unusual about them and they appeared operable.

When the three men arrived at the plant Ratley looked for a fire extinguisher and found one of the two that were in the storeroom. He returned with it to the two other men. Butler noticed that it had no hose, and asked Ratley if the other one did. Ratley went back to the storeroom and returned with the second extinguisher which also had no hose. He said, "Let's try it" and then bent over and depressed something. There was a loud noise like a "whish" and there "was dry powder all over the place." In the process, Ratley received fatal injuries.

The subject fire extinguisher was of a dry chemical type. It was designed only for use when the outlet was permanently connected with a piping system. They had originally been so installed by defendant in a ventilation duct which was a high fire hazard. Later they were removed and placed in the storeroom.

Defendant conceded at the oral argument before this court that there was substantial evidence in support of the jury's verdict.

Defendant contends that plaintiff's "production of evidence concerning plaintiff's poverty" and need was error. From the portion of the record available to us we find little, if any, of such evidence—and none that was objected to at the time by defendant. Indeed, defendant first offered *and then withdrew* an instruction which among other things stated, "Further, you are not to consider for any purpose the financial condition, earning power, poverty [or] affluence of the plaintiff."

Another complaint of error is based upon the claimed refusal of the trial court to give two of defendant's proposed instructions. One of these instructions was the previously mentioned "poverty" instruction and the other embraced a portion of section 3200, General Industry Safety Orders. Both of these instructions were withdrawn by defendant. The record indicates that out of the presence of the jury the trial judge discussed his proposed instructions with counsel. He had indicated, among other things, an intention not to give the two instructions, the non giving of which is the subject of the instant contention. The following proceedings took place: "THE COURT: Let the record show that we are presently in chambers and that we have gone over the proposed instructions and that counsel are in accord with the instructions which the Court proposes to give and that *all instructions not given are deemed to have been withdrawn with the following exceptions: As regards the instructions excepted to it is understood that counsel have offered these particular instructions and they have been refused by the Court. . . . Mr. Allard, are there any exceptions?* MR. ALLARD [Defendant's counsel] : *None, Your Honor."* (Italics added.)

In view of these proceedings it is clear that defendant has waived any right to complain about the refusal of the two instructions in question. ■ A party who has agreed at the trial that an instruction proposed by him shall be deemed withdrawn cannot contend on appeal that the instruction should have been given. (*Ferrel* v. *Safeway-Steel Scaffolds,* 57 Cal.2d 651, 652 [21 Cal.Rptr. 575, 371 P.2d 311] ; *Sill Properties, Inc.* v. *CMAG, Inc.,* 219 Cal.App.2d 42, 52-53 [33 Cal. Rptr. 155] ; *Cowin* v. *Lindsay,* 175 Cal.App.2d 62 [345 P.2d 347].)

Defendant next contends error in the granting of judgment

of nonsuit as to two codefendants, thus depriving it of a right to contribution from joint tortfeasors. This contention is without merit for even if the nonsuits here ordered were improper, defendant cannot complain. ▉ It is established law that a defendant who is himself liable is not aggrieved by the exoneration of a codefendant. (*Du Frene* v. *Kaiser Steel Corp.*, 231 Cal.App.2d 452, 455 [41 Cal.Rptr. 834]; *Fran-Well Heater Co.* v. *Robinson*, 182 Cal.App.2d 125, 132 [5 Cal.Rptr. 900]; *Click* v. *Southern Pac. Co.*, 113 Cal.App. 528, 529-530 [298 P. 839].) This rule was not changed by the enactment of Code of Civil Procedure sections 875-880, relating to contribution among joint tortfeasors. (*Guy F. Atkinson Co.* v. *Consani*, 223 Cal.App.2d 342 [35 Cal.Rptr. 750].)

Finally defendant asserts that the jury award was excessive, and a result of passion, prejudice and sympathy. ▉ It is fundamental that a reviewing court cannot reverse a judgment because of excessive damages unless the amount of the verdict is so disproportionate to the loss shown by the evidence that the result reached may be said to shock the conscience. (*Daggett* v. *Atchison, T. & S. F. Ry. Co.*, 48 Cal.2d 655, 666-667 [313 P.2d 557].) Where the trial court has refused to interfere with the jury's determination of the factual issue of damages an appellate court cannot interpose its own judgment on this issue unless it is convinced that the verdict is so plainly and outrageously excessive as to suggest at first blush passion, prejudice or corruption on the part of the jury. (*Arellano* v. *City of Burbank*, 13 Cal.2d 248, 258 [89 P.2d 113]; *Dropo* v. *City & County of San Francisco*, 167 Cal.App.2d 453, 462 [334 P.2d 972]; *Gall* v. *Union Ice Co.*, 108 Cal.App.2d 303, 321 [239 P.2d 48].)

▉ In a wrongful death case such as this there can of course be no recovery unless plaintiff has suffered a pecuniary loss. (*Ginochio* v. *City & County of San Francisco*, 194 Cal. 159, 167 [228 P. 428]; *Estate of Riccomi*, 185 Cal. 458, 461 [197 P. 97, 14 A.L.R. 509].) However, pecuniary loss is not based solely upon a legal right to support, but rather upon the plaintiff's reasonable expectation of benefits during the lifetime of the decedent which may originate in a purely moral obligation. (*Karwoski* v. *Grant*, 30 Cal.App.2d 171, 179 [85 P.2d 944].)

▉ At the time of her son's death plaintiff, 55 years of age, had a life expectancy of 23.3 years. She had a close relationship with her son. During her second marriage her husband's earnings were small and her son assisted in her

support. Her son gave her a one-half interest in an apparently sound $10,000 promissory note he had earned for services rendered on a ranch. He gave her money when she needed it. During the preceding three years he had bought more than one-half of her clothing and had made other purchases for her. Plaintiff depended on him for her groceries, clothing and automobile repairs. He kept her house up and painted its rooms many times. He built a patio on the house and paid for the materials.

Clearly the amount of the verdict here is not so disproportionate to plaintiff's loss and damages as shown by the evidence that the result reached may be said to shock the conscience.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.