[L.A. No. 30055. In Bank. July 25, 1974.]

ELIZABETH ANN STEED, a Minor, etc., Plaintiff and Appellant, v. IMPERIAL AIRLINES et al., Defendants and Respondents.

## COUNSEL

David H. R. Pain and Pain, Moody & Pippin for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, Marvin E. Lewis, William H. Lally, Joseph W. Cotchett, Herbert Hafif, David Daar and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Carl A. Becker, Peter Abrahams and Dryden, Harrington & Swartz for Defendant and Respondent Garrett Corporation.

No appearance for other Defendants and Respondents.

## OPINION

**WRIGHT, C. J.**—Elizabeth Ann Steed, a minor, appeals from a judgment for defendants entered by the trial court following its order granting defendants' motion for summary judgment in an action for the wrongful death of Elizabeth's stepfather, Ronald Steed.

■ The single issue raised on this appeal is whether a stepchild, treated in all respects as the natural child but not formally adopted by the deceased stepfather, may maintain an action for the wrongful death of the stepparent under Code of Civil Procedure section 377 which at the time the alleged cause of action arose limited such right of action to "heirs" and "personal representatives" of the deceased.[1] We have concluded that Elizabeth does not qualify as a proper plaintiff within the meaning of the statute and that the judgment must be affirmed.

For purposes of the motion the parties stipulated to the factual matters which are pertinent to the issue of Elizabeth's status as a proper plaintiff under the statute. The stipulation is quoted in the margin.[2] The motion

---

[1] At the time the cause of action at issue arose, section 377 provided in part: "When the death of a person not being a minor, or when the death of a minor person who leaves surviving him either a husband or wife or child or children or father or mother, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured. If any other person is responsible for any such wrongful act or neglect, the action may also be maintained against such other person, or in case of his death, his personal representatives. In every action under this section, such damages may be given as under all the circumstances of the case, may be just, but shall not include damages recoverable under Section 573 of the Probate Code. The respective rights of the heirs in any award shall be determined by the court. . . ."

[2] The stipulation recites:

"1. Said minor, ELIZABETH ANN STEED, was born out of wedlock on April 8, 1959, to MARTHA STEED prior to her marriage to the deceased, RONALD G. STEED.

"2. Plaintiff, ELIZABETH ANN STEED, is the natural daughter of plaintiff MARTHA STEED, who has from the date of said child's birth had the legal custody of said ELIZABETH ANN STEED.

"3. The deceased RONALD G. STEED, is not the natural father of ELIZABETH ANN STEED.

"4. MARTHA STEED and the deceased, RONALD G. STEED, were married on April 25, 1962, and remained married until RONALD G. STEED's accidental death on January 8, 1968.

"5. Prior to the marriage of MARTHA STEED and RONALD G. STEED an oral agreement was made between them that upon their marriage one to the other, RONALD G. STEED would assume the full obligation of father and parent to the said ELIZABETH ANN STEED.

"6. From the date of the marriage of the parties on April 25, 1962, until the death of RONALD G. STEED on January 8, 1968, the said RONALD G. STEED held out the

for summary judgment and the stipulated facts challenge only Elizabeth's status as a plaintiff, and other matters such as responsibility for the wrongful death and the extent of the damages to the stepdaughter, if any, are not at issue on this appeal.

■ It is well settled that the right to bring an action for the wrongful death of a human being is limited to the persons described in Code of Civil Procedure section 377. (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 9-10 [187 P.2d 752]; *Ruiz* v. *Santa Barbara Gas etc. Co.* (1912) 164 Cal. 188 [128 P. 330]; *Bond* v. *United Railroads* (1911) 159 Cal. 270, 276 [113 P. 366]; *Salmon* v. *Rathjens* (1907) 152 Cal. 290, 294 [92 P. 733].) The use of the word "heirs" in section 377 has been narrowly interpreted as limiting this class of persons to those who would have been eligible to inherit from the decedent's estate had he died intestate. (*Kunakoff* v. *Woods* (1958) 166 Cal.App.2d 59, 62 [332 P.2d 773].) The statutes of succession provide for inheritance by "issue" (Prob. Code, §§ 221, 222), by adopted children from their adoptive parents (Prob. Code, § 257), and by illegitimate children from their mother and from their father if acknowledged by him (Prob. Code, § 255). There is, on the other hand, no provision for inheritance by dependent stepchildren. (*Estate of Lima* (1964) 225 Cal.App.2d 396, 398 [37 Cal.Rptr. 404].) It is thus clear that when the word "heirs" is construed in accordance with the laws of succession Elizabeth is to be excluded from the class of persons entitled to maintain an action for the wrongful death of decedent.

■ Plaintiff contends that the word "heirs" is not to be construed in accordance with the common law meaning which limits it to those who would inherit in the event of intestacy.[3] ■ The cause of action for

said ELIZABETH ANN STEED to all the world as his daughter, accepted her into his home, acquiesced and encouraged the use by said child of the name of STEED which she has at all times subsequently used, provided her with full support until his death, and at all times represented to the said minor that he was in fact her father, leading the said minor to believe to this date that he was in fact her father. During all of said period the said RONALD G. STEED treated the said ELIZABETH ANN STEED in exactly the same manner as he did his natural daughter, DEBORAH STEED, born February 11, 1963, claimed her as a dependent on his tax returns and made no attempt to make a demand upon the natural father of the said ELIZABETH ANN STEED for the support of said child.

"7. That at no time during said marriage and prior to his death did the said RONALD G. STEED formally adopt said minor ELIZABETH ANN STEED or institute any form of guardianship proceedings."

[3] In support of such contention plaintiff refers us to a number of decisions which are clearly distinguishable. (E.g., *Loomis* v. *State of California* (1964) 228 Cal.App. 2d 820 [39 Cal.Rptr. 820] [a stepson is a class A donee for purposes of Rev. & Tax. Code, § 15100, subd. (c), but the statute defines donor as one who stood "in the mutually acknowledged relationship of a parent"]; *McKay* v. *McKay* (1899) 125 Cal.

wrongful death, however, is one which is wholly statutory in origin. (*Kuna-koff* v. *Woods, supra,* 166 Cal.App.2d 59, 62.) In our view the limitation on those who may bring the action is one which is imposed by the Legislature and, absent a constitutional basis for departure from a clear expression of legislative intent, we are bound thereby. We find such clear expression in legislative history following the decision in *Evans* v. *Shanklin* (1936) 16 Cal.App.2d 358 [60 P.2d 554].

In the *Evans* case, indistinguishable in principle from the cause before us, an elderly and indigent mother, entitled pursuant to statutory law to support from her adult son, sought to recover in a wrongful death action from those responsible for the son's death. The plaintiff, however, was not an heir of the decedent as upon his death he also left surviving two adult sons and an estranged wife whom he had not supported "for a long time." Plaintiff there contended, consistent with plaintiff's views in the instant case, "that the intent of the legislature, as expressed in . . . [Code Civ. Proc., § 377], was to provide a right of action to each member of the family who was receiving or could have a right to expect to receive comfort, support and protection from the deceased." (*Id.*, at pp. 360-361.) The court examined and reviewed the law for an expression of legislative intent in support of the plaintiff's contention. Relying on this court's expressions of views in earlier cases (*Redfield* v. *Oakland C. S. Ry. Co.* (1895) 110 Cal. 277, 290 [42 P. 822, 1063]; *Estate of Riccomi* (1921) 185 Cal. 458, 460 [197 P. 97, 14 A.L.R. 509]; *Ruiz* v. *Santa Barbara Gas etc. Co., supra,* 164 Cal. 188, 191-192), the court in *Evans* held that "heirs" meant *only* heirs, stating "Though we might feel that considerations of social security and social justice should dictate that a mother situated as was the plaintiff mother here, living with and dependent upon her son for support and maintenance, remembering the son's separation from the latter's wife, *coupled with his legal obligation during his lifetime under the provisions of section 206 of the Civil Code to maintain his mother,* should have a right to bring an action for damages occasioned

---

65 [57 P. 677] [stepparent is not entitled to reimbursement for support furnished a stepchild, but issues raised relate only to *inter vivos* responsibilities]; *Kunakoff* v. *Woods, supra,* 166 Cal.App.2d 59 [putative spouse permitted a recovery in a wrongful death action, but she was held to be an "heir" within the meaning of Prob. Code, § 201, relative to community property]; *Spiller* v. *Thomas M. Lowe, Jr., and Associates, Inc.* (8th Cir. 1972) 466 F.2d 903 [recovery by stepchildren, but a case in admiralty]; *Bower* v. *Landa* (1962) 78 Nev. 246 [371 P.2d 657, 94 A.L.R.2d 1232] [recovery by a stepchild but only because the Nevada court determined he was entitled to succeed to the estate of the decedent as he had been equitably adopted under a Utah rule which deemed an agreement of adoption to be specifically performed, and the Nevada court gave full faith and credit to a Utah court's determination of such an adoption].) Other authorities cited by plaintiff are distinguishable on the same or similar grounds.

by the wrongful death of her son; nevertheless, the decision of the legislature as to how far it will extend the right is conclusive . . . . The remedy . . . must come from the legislature." (*Evans* v. *Shanklin, supra,* 16 Cal.App.2d 358, 362-363; italics added.)

Despite the strong appeal to the Legislature, both by the court and by the unusual equities appearing in *Evans,* the Legislature failed to respond in any manner which would warrant a broader interpretation of "heirs" by the time the cause of action herein arose. In the exercise of a judicial function, we should not assume the prerogative of making changes in a statute when the Legislature, by strong implication, has elected not to do so.[4]

Although the clear expression of legislative intent is determinative of the issue of statutory construction, we nevertheless deem it desirable to put to rest claims that those who are entitled to bring an action for wrongful death, that is, those who are to be deemed "heirs," are those who are dependent upon and thereby injured by the decedent's death. **(5)** The heirs' right of action, however, is not predicated on a dependency relationship—an heir who is not a dependent is equally authorized with one who is a dependent to bring a wrongful death action although the amount of their recoveries may differ. (See *Syah* v. *Johnson* (1966) 247 Cal.App.2d 534 [55 Cal.Rptr. 741].) Likewise, one who is a dependent but not an heir is not entitled to maintain an action. (*Evans* v. *Shanklin, supra,* 16 Cal.App.2d 358.)

Superficial language in *Redfield* v. *Oakland C. S. Ry. Co., supra,* 110 Cal. 277, is relied upon in support of the contention that injury because of the death of the decedent is the crucial element. It is said in that case: "[T]he word 'heirs' in the statute is intended to limit the right of recovery to a class of persons who, because of their relation to the deceased, are supposed to be injured by her death." (*Id.,* at p. 290.) A careful reading of *Redfield,* however, does not support the argument that the word heirs

---

[4]A 1968 amendment of section 377, not applicable in this case, is consistent with a legislative intent to strictly construe the word "heirs." (Stats. 1968, ch. 766, p. 1488, § 1.) The amended statute permits a cause of action for wrongful death to be maintained by "dependent parents" of the decedent, as well as by heirs, thus belatedly curing the injustice complained of in *Evans* 32 years earlier. The 1968 amendment does not purport to expand the term "heirs" but rather to create a second category of person who may bring actions for a wrongful death. Dependent parents, however, are *the only* persons who have been accorded the benefits of the amended section 377. Certainly, it would appear, had the Legislature intended to further expand the class to include persons such as plaintiff, it would have been a simple matter of drafting to insert the word "stepchildren" as well as "dependent parents."

is intended to include anyone who, because of a particular relationship to the deceased, merely suffers some injury by reason of the death of the decedent. The question in that case was whether natural children were required to be in a position to actually inherit from their deceased mother in order that they might qualify as heirs within the meaning of section 377. In holding that it was not necessary for such children to be entitled to receive any share of the decedent's estate, this court noted, inter alia, that a recovery in a wrongful death action was not a recovery of a portion of the estate or for the injuries inflicted on the decedent, but rather for injuries actually suffered by the heirs of the decedent by reason of the latter's death. It was in this context that the court spoke of those who were "supposed to be injured" by the death of the decedent. It is particularly significant that in so speaking the court referred only to *heirs* who were supposed to be injured.

*Redfield* stands for the proposition that a wrongful death action can be maintained only by a person who, *in addition to being an heir,* also suffered some injury. ■ "It is settled by the decisions that an action of the character authorized by section 377 . . . is one solely for the benefit of the heirs, by which they may be compensated for the pecuniary injury suffered by them by reason of the loss of their relative . . . ." (*Ruiz* v. *Santa Barbara Gas etc. Co., supra,* 164 Cal. 188, 191-192.)

There is likewise no justification for reliance upon the rationale of *Clevenger* v. *Clevenger* (1961) 189 Cal.App.2d 658 [11 Cal.Rptr. 707, 90 A.L.R.2d 569]. That case dealt with dependency questions and suggests a basis upon which a stepchild might look to a putative parent for support. It involved claims for support asserted in divorce proceedings in behalf of an illegitimate child of the wife against her husband. It was urged that because he recognized and supported the child as his own from the time of birth he was estopped from avoiding liability for providing continuing support for the child. The court held that the record did not establish an estoppel but noted wherein an obligation for support based on such a concept might lie. It stated: "[I]f the facts would establish an express agreement for the maintenance of the child or an estoppel as to the child . . . the husband would be liable for the child's support." (*Id.,* at pp. 664-665.)

■ Whatever the impact of *Clevenger* the issue there was the right of support against a putative father. Although that right might give rise to an appropriate claim against the estate of such a father upon his death, as in the case of property settlement or other agreements providing for

support (see *Estate of Rivolo* (1951) 194 Cal.App.2d 773 [15 Cal.Rptr. 268]), it would not confer upon the child or a former wife the status of an heir, as that status is determined only by law. (*Kunakoff* v. *Woods, supra,* 166 Cal.App.2d 59, 62.) ■ As stated, injury because of the wrongful death of a stepparent or dependency on such a stepparent cannot operate to convert a stepchild to an heir within the meaning of the statute.

There remains the question of whether a legislative classification which limits the right to recover in a wrongful death action to the heirs of a decedent is so unreasonable as to offend constitutional prohibition against the denial of equal protection of the laws. It is important to this discussion that it be understood that "heirs" are to be limited to that narrow class of persons who would have been eligible to *succeed* to a decedent's estate had he died intestate. If the class were to consist of a broader group of persons who were *injured* by a decedent's death, then we would not argue against a rationale which required a tortfeasor who caused the death of a putative father to bear some liability to a child, who, in a proper case was entitled to support on principles of contract or estoppel. Whether a father's obligation of support arises out of the relationship of father and natural child or is dependent upon some other principle of law, the wrongful death of the father, putative or otherwise, would be damaging economically and emotionally to the child. To deny such a putative child the right of recovery while according it to a natural child might well be an unwarranted classification and a denial of the equal protection of the laws. But this is not our case as the fact of injury is not to be substituted for an heirship relationship.

■ The question thus is whether a classification which includes all the heirs of a decedent as a limitation on those who are entitled to bring a wrongful death action constitutes invidious discrimination. The classification is one which has never varied throughout the state's legal history. It is, in the strictest sense, one which is based entirely upon blood lines except where substituted through the volitional act of adoption. No claim is made that such is a suspect classification calling for an application of the "strict scrutiny" test. (See *Hirabayashi* v. *United States* (1943) 320 U.S. 81, 100-111 [87 L.Ed. 1774, 1785-1792, 63 S.Ct. 1375].) Rather the classification must be upheld against attack on equal protection grounds if the " 'distinctions drawn by [the] challenged statute bear some rational relationship to a conceivably legitimate state purpose.' " (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; see also *Kotch* v. *Pilot Comm'rs* (1947) 330 U.S. 552, 556 [91 L.Ed.

1093, 1096-1097, 67 S.Ct. 910].) A reasonable state purpose is achieved, of course, by providing for the recovery of a financial loss wrongfully suffered in limited situations by one who stands in a close relationship to a deceased. The question is thus whether there is some rational relationship to the accomplishment of the legitimate state purpose in limiting the right of recovery to heirs of the deceased to the exclusion of non-adopted stepchildren. (See *Swoap* v. *Superior Court* (1974) 10 Cal.3d 490, 505-506 [111 Cal.Rptr. 136, 516 P.2d 840].)

It seems without dispute that the class of those who suffer the greatest loss upon a wrongful death are the heirs of the deceased. Heirs are those who, as a class, stand in the closest relationship to a deceased.[5] This is not to say that in all instances persons who are not in the class may not suffer equal or greater losses than some who are within the class, but the Legislature is not compelled to anticipate and provide for such persons. The constitutional requirement is satisfied if the classification is a reasonable one or where, as here, by confining those who may recover to heirs, the Legislature has placed a reasonable limitation on wrongful death actions.

"State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." (*McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].) Nor is it the court's function to weigh the social value of the statute to determine whether a classification may have been more finely drawn. (*Ferguson* v. *Skrupa* (1963) 372 U.S. 726 [10 L.Ed.2d 93, 83 S.Ct. 1028, 95 A.L.R.2d 1347].) ▮ Our inquiry on fundamental concepts of equal protection thus leads to the conclusion that section 377 is reasonably drawn to limit recovery to those intestate heirs who suffer loss by the fact of a wrongful death.[6]

Plaintiff further refers us to *Levy* v. *Louisiana* (1968) 391 U.S. 68 [20 L.Ed.2d 436, 88 S.Ct. 1509] as lending support to her claim that concepts of equal protection require her inclusion within the class of those entitled

---

[5]It is recognized, however, that recovery is not predicated alone on being within the class, as there must additionally be a demonstrated loss. (*Ruiz* v. *Santa Barbara Gas etc. Co., supra,* 164 Cal. 188, 191-192.)

[6]The identical limitation, of course, is made as to those who are entitled to inherit from the estate of the decedent in the event of an intestacy. The classification being reasonable for purposes of inheriting from the estate it must also be reasonable for purposes of awarding money damages based on the decedent's wrongful death. The laws of succession have not been challenged on the basis of equal protection.

to bring an action for the wrongful death of her stepfather. There, the United States Supreme Court held that a Louisiana statute which denied illegitimate as distinguished from legitimate children the right to sue for the wrongful death of a natural mother created an unlawful classification. The impropriety was in discriminating between children naturally born to the same mother—a discrimination not made in our statutes determining heirship. (Prob. Code, § 255.)

*Levy* has been explained and limited in its application by a later decision of the high court. In *Labine* v. *Vincent* (1971) 401 U.S. 532 [28 L.Ed.2d 288, 91 S.Ct. 1017], the court had before it a Louisiana statute which barred an illegitimate child, who had nevertheless been acknowledged, from sharing equally with legitimate issue in the father's estate. The high court held that there was no invidious discrimination which offended either due process or equal protection concepts. *Levy* was distinguished on the ground that the statute in that case created an "insurmountable barrier" to participation by the illegitimate child with other issue in a wrongful death action. The illegitimate child in *Labine*, however, was not deemed to have been barred from inheriting from her father as he could have provided for her by will, or could have elected to legitimate her by marrying her mother or executing a formal statement of legitimation. (*Id.*, at p. 539 [28 L.Ed.2d at p. 294].) The court stated: "In short, we conclude that in the circumstances presented in this case, there is nothing in the vague generalities of the Equal Protection and Due Process Clauses which empowers this Court to nullify the deliberate choices of the elected representatives of the people of Louisiana." (*Id.*, at pp. 539-540 [28 L.Ed.2d at p. 294].)

There is in California no "insurmountable barrier" to the right of a legitimate or an illegitimate child to succeed to the estate of its natural parent, to bring an action for the wrongful death of such parent or, as in this case, to bring an action for the wrongful death of the spouse of its natural parent. Ronald Steed could have adopted plaintiff, which would have conferred upon her the status of an heir in the event of his intestacy (Prob. Code, § 257), and the *Levy-Labine* "insurmountable barrier" test of constitutional denial is thus satisfied.[7] But plaintiff does not have the status of an illegitimate child seeking a recovery for the wrongful death of a natural parent as in *Levy* or seeking status as an heir of a natural parent as in *Labine*. She is the child of Ronald Steed's surviving spouse,

---

[7]In *Arizmendi* v. *System Leasing Corp.* (1971) 15 Cal.App.3d 730 [93 Cal.Rptr. 411], the court, without benefit of the United States Supreme Court's later pronouncements in *Labine*, relied upon *Levy* in holding that an illegitimate child may bring an action for the wrongful death of its natural father.

and a fortiori no claim of unreasonableness can be heard because she has been denied rights to which only the heirs of Ronald Steed are entitled.

Although we commend those who express concern because of the situation in which the minor plaintiff has been innocently placed, it is fair to note that the minor is a dependent of her mother who survives and, we may presume, has been compensated for the wrongful death of the decedent, her husband.[8] Insofar as the record shows the minor also continues to be a dependent of her natural father and, assuming that she has been acknowledged, an heir entitled to bring an action in the event of his wrongful death. (Prob. Code, § 255.) There is no established legal relationship between the decedent and the minor which required that the decedent support or continue to support her as there was in the case of the dependent mother in *Evans* v. *Shanklin, supra,* 16 Cal.App.2d 358, who nevertheless was denied the right to bring an action for the wrongful death of her son.

We accordingly reject as untenable any rationale which substitutes our own for a legislative judgment when it infringes no constitutional limitation. The plaintiff, like any number of other persons who, in particular cases, may suffer injury and economic and personal loss by the death of an individual, is without legal recourse absent specific statutory remedy.

The judgment is affirmed.

McComb, J., Sullivan, J., and Clark, J., concurred.

**BURKE, J.**—I dissent. The majority argue that since the cause of action for wrongful death is wholly statutory in origin, this court cannot redefine the term "heirs" as used in section 377 to include dependent stepchildren such as Elizabeth. They contend that *Evans* v. *Shanklin,* 16 Cal. App.2d 358 [60 P.2d 554], recognizes a clear legislative intent to confine such actions to those persons expressly specified by the statute. They point to the fact that the Legislature waited 32 years to correct the injustice pointed out in our holding in *Evans,* and that "In the exercise of a judicial function,

---

[8]One who has a right to pursue a wrongful death action is entitled to recover her pecuniary loss. When a decedent's spouse has a right to expect that she would receive support for her child from the deceased husband and stepparent no reason appears why such expectations could not be taken into consideration in determining her pecuniary loss. Such loss "is not based solely upon a legal right to support, but rather upon the plaintiff's reasonable expectation of benefits during the lifetime of the decedent which may originate in a purely moral obligation." (*Swails* v. *General Elec. Co.* (1968) 264 Cal.App.2d 82, 86 [70 Cal.Rptr. 143]; see also *Karwoski* v. *Grant* (1938) 30 Cal.App.2d 171, 179 [85 P.2d 944].)

we should not assume the prerogative of making changes in a statute when the Legislature, by strong implication, has elected not to do so." (*Ante,* p. 121.)

As I shall indicate, this court has the responsibility to construe legislation in such a manner as to save its constitutionality, and that an interpretation of section 377 which would exclude such persons as Elizabeth should require us to strike down the statute as a denial of equal protection of the law; whereas to include her within the term "heirs" would not, and neither would it be contrary to legislative intent nor policy.

Legislative silence after a judicial decision construing a statute should give rise, at most, to a slim inference of acquiescence or passive approval. (*People* v. *Daniels,* 71 Cal.2d 1119, 1127-1128 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) Often, all that may be said of such silence is that, for whatever reasons, the Legislature chose not to act. (See *Cleveland* v. *United States,* 329 U.S. 14 [91 L.Ed. 12, 67 S.Ct. 13] [concurring opn. 329 U.S. 21 (91 L.Ed. 18)].) And when the Legislature finally does act, the new or amended statute may reflect nothing more than the dimensions of the specific problem brought to its attention, "inviting the conclusion that the legislative policy is equally applicable to other situations in which the mischief is identical." (*Moragne* v. *States Marine Lines,* 398 U.S. 375, 392 [26 L.Ed.2d 339, 352, 90 S.Ct. 1772].)

This observation is applicable here. In *Evans,* we held that "heirs" could not be extended to include dependent parents. In 1968, however, the Legislature amended section 377 to expressly include such parents within the class authorized to bring a wrongful death action. In my view, the amendment illustrates a legislative policy to permit such actions by all persons who have incurred damages substantially identical to those incurred by decedent's heirs at law. Contrary to the majority, I cannot place any significance upon the fact that the Legislature failed to expressly include dependent stepchildren in section 377—clearly this particular injustice had not been brought to its attention when it drafted the amendment. Thus, I would have no difficulty holding that the inclusion of dependent children such as Elizabeth promotes, rather than frustrates, existing legislative policy to allow a wrongful death recovery by the heirs and relatives of the decedent.

But, as I indicated above, even if the Legislature had intended to foreclose such persons as Elizabeth from bringing such actions, she should nonetheless prevail by reason of the application of equal protection principles inherent in the Fourteenth Amendment to the United States Constitution. These principles require that the distinctions drawn by a statute granting

an economic benefit to one class while denying it to another must at least bear some rational relationship to a conceivable legitimate state purpose. (*Weber* v. *Aetna Casualty & Surety Co.*, 406 U.S. 164, 172-173 [31 L.Ed. 2d 768, 777-778, 92 S.Ct. 1400]; *Serrano* v. *Priest,* 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *In re Antazo,* 3 Cal.3d 100, 110, 111 [89 Cal.Rptr. 255, 473 P.2d 999].) In addition, a statute which appears valid on its face may have a discriminatory effect in its application thereby denying equal protection of the law. (*Yick Wo* v. *Hopkins,* 118 U.S. 356, 373 [30 L.Ed. 220, 227, 6 S.Ct. 1064]; *Brock* v. *Superior Court,* 12 Cal.2d 605, 610 [86 P.2d 805].)

The purpose of section 377 is to compensate the enumerated class of persons "for the pecuniary loss suffered by them by reason of the loss of their relatives by death." (*Kunakoff* v. *Woods,* 166 Cal.App.2d 59, 62 [332 P.2d 773]; *Estate of Bright* v. *Western Air Lines,* 104 Cal.App.2d 827, 829 [232 P.2d 523].) Thus, "the word 'heirs' in the statute is intended to limit the right of recovery to a class of persons who, because of their relation to the deceased, are supposed to be injured by her death." (*Redfield* v. *Oakland C.S. Ry. Co.,* 110 Cal. 277, 290 [42 P. 822, 1063].) Since such a limitation narrows liability in a rational way, as well as eliminating difficult proof problems which might otherwise arise, section 377 on its face meets the demands of the equal protection clause. However, even though the classification drawn by the word "heirs" has a rational basis in general, that statute cannot have the effect (see, e.g., *Yick Wo* v. *Hopkins, supra,* 118 U.S. 356) of excluding persons, such as Elizabeth, who suffer an injury from decedent's death that is both emotionally and economically indistinguishable from that suffered by a natural child. I can find no rational basis for a distinction which is based solely upon the technical definition of the word "heirs."

In *Levy* v. *Louisiana,* 391 U.S. 68 [20 L.Ed.2d 436, 88 S.Ct. 1509], the United States Supreme Court held invalid under the equal protection clause a Louisiana statute which had been interpreted as barring an action by illegitimate children for the wrongful death of their mother. The court pointed out (at p. 72 [20 L.Ed.2d at p. 439]): "Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. These children, though illegitimate, were dependent on her; she cared for them and nurtured them; they were indeed hers in the biological and in the spiritual sense; *in her death they suffered wrong in the sense that any dependent would.*" (Italics added.) In a footnote attached to the

above quoted statement, the court noted that "Under Louisiana law both parents are under a duty to support their illegitimate children."[1]

Later, in *Weber* v. *Aetna Casualty & Surety Co., supra,* 406 U.S. 164, the Supreme Court held that Louisiana's denial of equal recovery rights to unacknowledged illegitimate children under the state's workmen's compensation laws was also a denial of equal protection. The court again recognized that the dependency of the child is the same regardless of the circumstances of its birth, stating (pp. 169-170 [31 L.Ed.2d p. 775]): "Here, as in *Levy,* there is impermissible discrimination. An unacknowledged illegitimate child may suffer as much from the loss of a parent as a child born within wedlock or an illegitimate later acknowledged. So far as this record shows, the dependency and natural affinity of the unacknowledged illegitimate child for her father were as great as those of the four legitimate children whom Louisiana law has allowed to recover. [Fn. omitted.] *The legitimate children and the illegitimate child all lived in the home of the deceased and were equally dependent upon him for maintenance and support. . . .*" (Italics added.)

A similar result was reached in *Arizmendi* v. *System Leasing Corp.,* 15 Cal.App.3d 730 [93 Cal.Rptr. 411], where the Court of Appeal held that a distinction under the California statutes, preventing an unacknowledged illegitimate child from bringing an action under Code of Civil Procedure section 377 for the wrongful death of his father, constituted a denial of equal protection. (See Prob. Code, § 255.) The court stated in *Arizmendi* (p. 736) that, "The law of this state recognizes and creates an obligation on the part of the natural father of a minor child, whether the child is legitimate or illegitimate, to provide the necessities of life for such child. [Citation.] The illegitimate minor child, therefore, is entitled as a matter of law to look for, and receive support from its natural father at least for the necessities of life. The deprivation of this right by the tortious act of a third person resulting in the death of the natural father is just as real and as devastating to an illegitimate minor child as it is to a legitimate minor child. . . ."

---

[1]The majority relies upon *Labine* v. *Vincent,* 401 U.S. 532 [28 L.Ed.2d 288, 91 S.Ct. 1017], to distinguish *Levy.* They argue that because decedent could have adopted Elizabeth there was no insurmountable barrier for her to overcome. The implication to be drawn from this statement is that any discrimination short of creating an "insurmountable barrier" is permissible. However, numerous cases have established the general proposition that discriminations which only disadvantages a class of persons are as subject to the command of the Fourteenth Amendment as discriminations which are in some sense more absolute. (E.g., *Dandridge* v. *Williams,* 397 U.S. 471 [25 L.Ed.2d 491, 90 S.Ct. 1153]; *Hunter* v. *Erickson,* 393 U.S. 385 [21 L.Ed.2d 616, 89 S.Ct. 557]; *Douglas* v. *California,* 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]; *Smith* v. *Cahoon,* 283 U.S. 553 [75 L.Ed. 1264, 51 S.Ct. 582].)

In the instant case, although Elizabeth is not the natural child of the decedent, she was no less dependent upon him than were the children in *Levy, Weber* and *Arizmendi, supra,* dependent upon their respective parents. Elizabeth relied upon the decedent for her support and was cared for and nurtured by him. Indeed under the facts as stated above, Elizabeth was the child of the decedent in every sense but biological, and was even led to believe that she was decedent's biological child. In addition, under the rule stated in *Clevenger* v. *Clevenger,* 189 Cal.App.2d 658, 670-675 [11 Cal.Rptr. 707, 90 A.L.R.2d 569], the relationship between Elizabeth and the decedent was such that the decedent would have been estopped, had he lived, from denying a continuing obligation to support her.

In *Clevenger,* the court held that under a limited set of circumstances a child's stepfather would not be allowed to deny that he was the child's father to avoid paying child support. The court stated (p. 671) that, "If the facts should show . . . that the husband represented to the boy that he was his father, that the husband intended that his representation be accepted and acted upon by the child, that the child relied upon the representation and treated the husband as his father and gave his love and affection to him, that the child was ignorant of the true facts, we would have the foundation of the elements of estoppel." The court held that since the stepfather had publicly acknowledged and treated the child as his own, and represented this fact to the child for such a period as to make it impractical for the child to locate and seek support from its natural father, the stepfather would be estopped from denying a continuing obligation to support the child as if it were his own.[2]

The stipulated facts in the instant case likewise would have established an estoppel against decedent, preventing him from denying parenthood or avoiding an obligation to support Elizabeth. The relationship of father and

[2]I note the reasonable limitations placed upon this doctrine of estoppel by the court in *Clevenger* where it states (pp. 674-675): "We have been careful, however, to restrict the indicated liability of the putative father to the case in which he represents to the child expressly or by implication that he is the child's natural father and the child believes him to be the natural father. We do not suggest that the husband who supports his wife's child by another man necessarily incurs liability for the support of that child. Here, if the facts so show, we predicate an estoppel upon the child's acceptance of the representation of the putative father that he is the natural father. The analogous situation in which the putative husband may be charged with a putative marriage rests upon the reputed wife's 'belief in the existence of a valid marriage.' (*Vallera* v. *Vallera* (1943), 21 Cal.2d 681, 684 . . . .)

"We emphasize a second limitation on the husband's liability: the representation must be of such long continuance that it frustrates the realistic opportunity of discovering the natural father and truly establishes the paternal relationship of the putative father and the child. We do not discuss here a relationship of some passing days; this relationship continued over the span of a decade."

child continued for a period of six years while decedent represented to Elizabeth that he was her natural father. Elizabeth relied upon these representations and held a continuing belief that decedent was in fact her natural father. Inasmuch as this reliance foreclosed her from seeking support from her natural father, it was detrimental to her. (Cf. *Clevenger* v. *Clevenger, supra,* 189 Cal.App.2d 658, 671.) Thus, at the time of his death, decedent owed to Elizabeth an obligation to support her to the same extent as if she were his natural child. This right to support was terminated by the allegedly tortious acts of defendants, a wrong for which Elizabeth must be provided a remedy. (Civ. Code, § 3523.)

The injury suffered by Elizabeth was identical in every respect to the injury suffered by her half-sister who is allowed to recover under section 377. Under these circumstances, it would be wholly inequitable to deny recovery to Elizabeth. Furthermore, prior to decedent's death, Elizabeth's physical and economic dependency upon him, as well as her economic expectations, were indistinguishable from those of the children involved in *Levy, Weber,* and *Arizmendi, supra,* whose rights were held to be protected by the equal protection clause. Thus, I find no rational reason for drawing a distinction between dependent stepchildren in Elizabeth's position and other dependent children, at least for the purpose of bringing an action for wrongful death. As in *Levy, Weber,* and *Arizmendi, supra,* to deny the child's right to recover for her loss would be an impermissible discrimination under the equal protection clause.[3]

It has long been the rule that if "the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution." (*County of Los Angeles* v. *Legg,* 5 Cal.2d 349, 353 [55 P.2d 206]; *San Francisco Unified School Dist.* v. *Johnson,* 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669].) By interpreting section 377 to allow recovery by stepchildren such as Elizabeth, we could save the statute's constitutional validity while carrying out the statute's purpose of limiting the class of persons entitled to recover for the wrongful death of a human being. I would hold, therefore, that the word "heirs" as used in Code of Civil Procedure section 377 includes within its

---

[3]The discrimination against Elizabeth is even more telling when section 377 is viewed as of its 1968 amendment. That amendment, as previously discussed, allowed dependent parents a cause of action for wrongful death. Clearly the harm suffered by a dependent stepchild is as great or greater than that of a dependent parent. There is no rational reason for drawing the distinction between the two.

meaning a dependent stepchild such as Elizabeth under the circumstances of this case.[4]

I would therefore reverse the judgment of the trial court dismissing Elizabeth's wrongful death action and remand the cause to the trial court with orders to deny defendant's motion for summary judgment and take such further proceedings as are necessary for the resolution of the action.

Tobriner, J., and Mosk, J., concurred.

Appellant's petition for a rehearing was denied August 28, 1974. Tobriner, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.

---

[4]This holding would not replace the word "heirs" in section 377 with a class of persons injured by the decedent's death nor would it mean that dependency is the relationship that gives rise to the action for wrongful death. I merely conclude that where two stepsisters suffer an identical injury because of their relationship to the deceased, there is no rational distinction that could be drawn allowing recovery by one but not by the other. Thus, to deny recovery to Elizabeth, but not to her stepsister, solely upon a technical definition of the word "heirs" contravenes the mandate of the equal protection clause.