[No. A028423. First Dist., Div. Five. Nov. 14, 1985.]

ROY LEWIS et al., Plaintiffs and Appellants, v.
REGIONAL CENTER OF THE EAST BAY et al.,
Defendants and Respondents.

## COUNSEL

Robert J. Valkevich and Reuben, Quint & Valkevich for Plaintiffs and Appellants.

Martin W. Johnson, Debra Spotts Blum, Lynn C. Schneider, Wilson, Elser, Moskowitz, Edelman & Dicker, Glynn & Harvey, Glynn, Harvey & Tosney, Robert J. Glynn, Leila H. Moncharsh, Sarrail & Russell, James A. Sarrail and Stephen W. Hall for Defendants and Respondents.

## OPINION

KING, J.—In this case we hold that the Legislature restricted the right to maintain an action for wrongful death to heirs as that term is defined by the

intestacy provisions of the Probate Code and did not intend that right to be exercised by one who became an heir by virtue of the heirs disclaiming any interest in the estate of the decedent.

## I.

Plaintiffs, Roy and Betty Lewis, are the paternal grandparents of the deceased minor, Robert Ralph Lewis, Jr. At the time of his death, the minor was 13 years old, had been diagnosed as moderately mentally retarded and hyperactive, and suffered from physical disabilities. Plaintiffs were the legal guardians of the minor and he resided with them as a member of their family unit. The minor's death occurred on December 5, 1981, by drowning. At the time, he was under the care and supervision of one of the defendants,[1] St. Elmo Nickols, an employee of defendant the H.A.T.C.H. Program, who had taken the minor on an outing to Gray Whale Cove, San Mateo County. The complaint alleged that the death was caused by Nickols' negligence in failing to observe and supervise the minor properly. At the time of filing the wrongful death action, the minor's natural parents were living as was the minor's half-brother. Following the minor's death and prior to the filing of this wrongful death action, his parents and half-brother filed disclaimers which waived any and all interest in the minor's estate as permitted by the Probate Code.[2]

Defendants moved for summary judgment contending plaintiffs did not have standing since they were not and could not be the minor's heirs as required by the wrongful death statute since both of his parents and a half-brother were alive. The trial court agreed and entered judgment for defendants. We affirm the judgment.

## II.

On appeal plaintiffs contend they are "heirs" and by virtue of the disclaimers are entitled to both inherit the minor's estate and maintain this action. They refer to the fact that the legal effect of a disclaimer is to treat the person disclaiming as though he or she had predeceased the decedent. Defendants argue that disclaimers of interest only permit plaintiffs to inherit, but have no effect on the right to maintain an action for wrongful death.

The right to bring an action for wrongful death is wholly statutory in origin and is limited to persons described in Code of Civil Procedure section

---

[1] The defendants are: Regional Center of the East Bay, Children's Home Society, H.A.T.C.H. Program and St. Elmo Nickols.

[2] The wrongful death statute and the Probate Code provisions pertaining to disclaimer and intestacy in effect at the date of death have all been amended. Our holding, however, would be identical under the former and the present provisions.

377.[3] (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 575 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on another point in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1]; *Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 119-120 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R.3d 1204], app. dism., 420 U.S. 916 [43 L.Ed.2d 387, 95 S.Ct. 1108].) Absent a constitutional basis for departure from the clear legislative expression, we are bound thereby. (*Ibid.*)

Section 377, the wrongful death statute on the date of death, provided: "(a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death . . . . [¶] (b) For the purposes of subdivision (a), 'heirs' means only the following: (1) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of Division 2 (commencing with Section 200) of the Probate Code . . . . [¶] *Nothing in this subdivision shall be construed to change or modify the definition of 'heirs' under any other provision of law.*" (Italics added.)

The intestacy statute on the date of death, Probate Code section 226, provided: "If the decedent leaves neither issue, spouse, parent, brother, sister, nor descendant of a deceased brother or sister, the estate goes to the next of kin in equal degree, excepting that, when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote."[4]

It is clear that when the word "heirs" for purposes of maintaining a wrongful death action is construed in accordance with the laws of intestate succession, plaintiffs' right to maintain an action for wrongful death must give way to the paramount rights of decedent's parents. The question remains whether the disclaimers of interest filed herein have the effect of creating a right to maintain an action for wrongful death in the grandparents. We hold they do not.

### III.

■ In interpreting a statute, we first look to the words at issue. If they are clear and unambiguous, there is no need for construction, and courts

---

[3]All further references herein to section 377 are to that section of the Code of Civil Procedure.

[4]The laws of intestate succession have been repealed and renumbered in Probate Code section 6400 et seq. (Added by Stats. 1983, ch. 842, § 55, operative Jan. 1, 1985.)

should not indulge in it. (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787]; *Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].) "Unless defendants can demonstrate that the natural and customary import of the statute's language is either 'repugnant to the general purview of the act,' or for some other compelling reason, should be disregarded, this court must give effect to the statute's 'plain meaning.' [Citation.]" (*Tiernan* v. *Trustees of Cal. State University & Colleges, supra,* 33 Cal.3d at pp. 218-219; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

▬ In the Probate Code the Legislature has supplied us with the definition of "heirs" and we have found no prohibition against giving the term its clear meaning. Although both parents and grandparents are heirs, the intestacy scheme incorporated by section 377 gives parents priority over the more remote relatives.

### A.

Plaintiffs urge that by reading the provisions for intestate succession in conjunction with the disclaimer provisions of the Probate Code, we must conclude that a disclaimer of interest also carries a waiver of all other indices of heirship. We find no support for this view. The two sections concern different legal interests and property rights and are contained in separate parts of the Probate Code. The wrongful death statute provides a right to be compensated for a tort which is personal and cannot be assigned. The disclaimer statutes allow an heir in either testate or intestate estates to disclaim his interest in decedent's property. To read together statutory provisions which the Legislature adopted for different purposes would place a judicial gloss on the statutes which the plain meaning and legislative history do not support.

### B.

Nor have plaintiffs offered any evidence that the policy behind both statutes is the same and must be harmonized. The purpose of the wrongful death statute is to permit recovery of compensation by heirs for economic loss and loss of consortium resulting from the death. (*Justus* v. *Atchison, supra,* 19 Cal.3d at p. 581.) The plaintiffs in such action stand in such a close relation to the decedent as to be presumed to be injured by his death. (*Steed* v. *Imperial Airlines, supra,* 12 Cal.3d at p. 121.) On the other hand, the disclaimer provisions are unrelated to any tort compensation scheme. These provisions concern *all beneficiaries,* whether heirs or not. It does not

purport to define who a proper plaintiff in a wrongful death action should be. Even if the parents and half-brother could waive their right to maintain a wrongful death action, there is no authority for the proposition that this statutorily created right can, in effect, be assigned by the filing of a disclaimer.

### C.

█ Wrongful death actions are creatures of statute and the right to maintain such an action is afforded only by the Legislature. (*Justus* v. *Atchison, supra,* 19 Cal.3d at p. 576; *Steed* v. *Imperial Airlines, supra,* 12 Cal.3d at p. 120.) Accordingly, the use of the word "heirs" in the wrongful death statute is to be strictly construed. (*Kunakoff* v. *Woods* (1958) 166 Cal.App.2d 59 [332 P.2d 773].) █ It would appear from the last paragraph of section 377 the Legislature has reemphasized that "heirs," for purposes of maintaining wrongful death actions, shall not affect any other provisions of law.

The Legislature has extended the right to maintain wrongful death actions from time to time, including in 1977, when an amendment to section 377 altered the holding of *Steed* by extending the right to putative spouses, stepchildren and parents. Equity would call for such an expansion here, but that is for the Legislature, not the courts. "We accordingly reject as untenable any rationale which substitutes our own for a legislative judgment when it infringes no constitutional limitation. The plaintiff, like any number of other persons who, in particular cases, may suffer injury and economic and personal loss by the death of an individual, is without legal recourse absent specific statutory remedy." (*Steed* v. *Imperial Airlines, supra,* 12 Cal.3d at p. 126.)

### D.

Plaintiffs could have avoided this entire conflict had they adopted the minor. (See *id.,* at p. 125.) They did not take this step. The Legislature, and not the courts, must decide whether to create a new category of guardians entitled to sue for wrongful death. The statutory classification scheme is clear, and, regardless of the unusual equities in this case, any fundamental change must be addressed to the Legislature. (See *id.,* at pp. 120-121; *California State Auto. Assn. Inter-Ins. Bureau* v. *Jacobson* (1972) 24 Cal.App.3d 850, 853 [101 Cal.Rptr. 366].)

The judgment is affirmed.

Haning, J., concurred.

**LOW, P. J.**—I respectfully dissent.

The decision to bar the guardian-grandparents from prosecuting this wrongful death action exalts form over substance. The policy behind the wrongful death statute is to permit recovery for the loss of such elements as comfort, love and affection as well as pecuniary losses. (See *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 69-70 [137 Cal.Rptr. 863, 562 P.2d 1022].) Plaintiffs were more than decedent's guardians; at all pertinent times they acted as his parents. These three considered themselves a family unit and exhibited the love and affection one would expect from that relationship. If we were to give the statute the meaning advanced by defendants, we would create two types of "heirs"; one for the purpose of intestate succession and the other for the purpose of prosecuting a wrongful death action. Under the facts of this case, such a dual interpretation would lead to incongruous results. This is especially true when, as in this case, the persons challenging the rights of the grandparents are *not* the parents but the alleged tortfeasors.

Implicit in appointing plaintiffs the guardians is the conclusion that (1) the appointment is necessary or convenient, (2) that plaintiffs are fit and proper persons to have custody of the minor, and (3) there is clear and convincing evidence that custody in a nonparent is in the best interest of the child, and that continued parental custody would be detrimental to the child. (Prob. Code, § 1514; Civ. Code, § 4600; *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 421-422 [188 Cal.Rptr. 781].) Since the minor has been removed from the parents' care and custody, it follows that the parents could not readily claim the loss of companionship, support or society from the minor's wrongful death that the plaintiffs can justly assert. (See *Krouse* v. *Graham, supra,* 19 Cal.3d at pp. 69-70.) If we were to grant the parents' standing to sue, as defendants urge, the parents would be plaintiffs in name only; they certainly could not assert a personal stake in the action or be said to have sustained a compensable injury. The only ones to benefit from such a result would be the tortfeasors, who could escape from paying any damages or only nominal damages for the minor's death.

The persons whose rights are at issue and who stand to gain the most from this lawsuit, the parents, are conspicuously absent. The lawsuit is being defended by the alleged tortfeasors. Nowhere is there any mention of the parents' rights or wishes. The defendants drape themselves in the twin banners of statutory construction and judicial restraint. However, defendants conveniently ignore the purpose behind the wrongful death statute; i.e., to compensate those family members who would suffer from the child's death. (*Ibid.*) The only family members who stand in such a relation to the decedent are his guardian-grandparents. By their absence, it is safe to assume that the parents recognize that by giving up all responsibility for the

child to the grandparents, they also waived any right to share in any recovery for the child's death. The parents' intention to treat the grandparents as the natural object of the decedent's bounty is evidenced by the execution of the disclaimer in the decedent's estate. (See former Prob. Code, § 190 et seq.)

Under the circumstances of this case, it would violate no public policy to hold that by disclaiming any interest in the minor's estate, the parents and half-brother also waived any right to sue on their behalf for wrongful death. Rather than working against public policy, this result encourages the perpetuation of blood ties while recognizing the real psychological and emotional impact felt by the guardians.

It is well recognized that in circumstances like this, guardians become the minor's "psychological parents." (See *Guardianship of Phillip B., supra,* 139 Cal.App.3d at p. 420.) If anything, this bond is even stronger when the guardians are also the child's grandparents. This "psychological parenthood" arises from the day-to-day attention to the child's needs for physical care, nourishment, comfort, affection and stimulation. (*Ibid.*) It may safely be said that such duties may be more burdensome with mentally retarded and/or disabled children, as in this case. The bonding and affection that develop during this relation is certainly deserving of legal protection, including the right to prosecute this wrongful death action.

A great injustice would be done should defendants be allowed to prevail. This results in reluctant plaintiffs with little or no incentive to vigorously prosecute this action. The defendants would receive insulation from any damages which would closely approximate the true nature of the loss.

Accordingly, I would reverse.

Appellants' petition for review by the Supreme Court was denied January 30, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.