[No. B054559. Second Dist., Div. Six. Dec. 3, 1991.]

MARILYN MARKS, Plaintiff and Appellant, v.
CYNTHIA LYERLA et al., Defendants and Respondents.

**COUNSEL**

Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald and Kirkland W. Garey for Plaintiff and Appellant.

Lawler, Bonham & Walsh, Terrence J. Bonham, Donald F. Austin and Patrick McCarthy for Defendants and Respondents.

## Opinion

**STONE (S. J.), P. J.**—Appellant Marilyn Marks argues that she is entitled to bring this wrongful death action for the alleged murder of her granddaughter by the child's mother. We disagree in this case of first impression.

Appellant is only a potential heir of the decedent under the California intestate succession scheme. The alleged murderer is the decedent's sole heir and, as such, is the only person statutorily authorized to bring an action for the decedent's wrongful death.

*Facts*

On July 27, 1989, 15-month-old Kajsa Lyerla (the decedent) drowned in a fish pond on the property of her maternal grandfather and his wife, respondents Roger and Clare Knox (respondents Knox). Respondent Cynthia Lyerla (respondent Lyerla) is the decedent's mother. The decedent was under her mother's sole custody and supervision when she died.

Marilyn Marks (appellant) is the paternal grandmother of the decedent. Her son Harold Lyerla was the decedent's father and married to respondent Lyerla. Harold Lyerla was murdered in 1988 by Victor Perea, a former employee of John Litchfield. Respondent Cynthia Lyerla is currently married to John Litchfield.

Appellant filed her complaint for wrongful death against respondents in March 1990.[1]

In her first amended complaint, appellant generally alleged that respondent Lyerla was ineligible to maintain an action for wrongful death since she had intentionally killed the decedent. Appellant also alleged that there were two prior life threatening incidents involving respondent Lyerla and the decedent—one in 1988 when the decedent allegedly opened a "child proof" bottle and swallowed an overdose of Advil, and the other in 1989 when the decedent was left alone in a bathtub of water while respondent Lyerla allegedly locked herself out of the house.

In the first cause of action in her amended complaint, appellant alleged that she is the surviving heir within the meaning of the wrongful death

---

[1] Also named as defendants were Robert Bletcher, personal representative of the decedent's estate, who was made an "involuntary plaintiff" in the suit, and Commercial Life Insurance Company who issued life insurance policies on Harold and Kajsa Lyerla's lives. Since neither of these defendants participates in this appeal, "respondents" refers only to Cynthia Lyerla and the Knoxes.

statute since respondent Lyerla intentionally caused the decedent's death. Appellant's second cause of action for declaratory relief requested a determination of appellant's and respondent Lyerla's rights with respect to the proceeds of two life insurance policies issued on Harold Lyerla's life and an additional policy taken out on the decedent's life. Appellant alleged that respondent Lyerla was not entitled to any of the life insurance proceeds since she had intentionally killed both her husband and daughter.

Appellant's third and fourth causes of action against respondents Knox alleged premises liability and negligent failure to supervise.

Respondents' demurrers to appellant's first amended complaint primarily contested her standing to maintain the wrongful death suit since respondent Lyerla was alive and hence was the decedent's "heir" within the meaning of the wrongful death statute. The trial court agreed that appellant lacked standing to bring the action, and sustained the demurrers without leave to amend.

Appellant appeals from the judgment of dismissal.

## DISCUSSION

Appellant contends that she is entitled to bring this wrongful death suit, as she is the decedent's "heir" within the meaning of Code of Civil Procedure section 377 (hereafter section 377). This claim is based on the allegations in the amended complaint that, by murdering the decedent, respondent Lyerla forfeited her right to intestate succession pursuant to Probate Code section 250, which prohibits a decedent's killer from inheriting decedent's property.[2]

Since an action for wrongful death in California is governed solely by statute, the right to bring one is limited only to those persons described by the Legislature in section 377. (*Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 119 [115 Cal.Rptr. 329, 524 P.2d 801]; *Lewis* v. *Regional Center of the East Bay* (1985) 174 Cal.App.3d 350, 352-353 [220 Cal.Rptr. 89].) Absent a constitutional basis for departure from legislative intent, the courts of this

---

[2]Section 250 reads in pertinent part: "(a) A person who feloniously and intentionally kills the decedent is not entitled to any of the following: . . . [¶] (2) Any property of the decedent by intestate succession. . . . [¶] (b) In the cases covered by subdivision (a): [¶] (1) The estate of the decedent passes as if the killer had predeceased the decedent . . . ."

Probate Code section 254, subdivisions (a) and (b), requiring that an intentional killing be established by a murder conviction or probate court judgment, is inapplicable here as it pertains only to the statutory scheme dealing with the effect of homicide on succession rights. (Prob. Code, § 250 et seq.)

state are bound by the statute's provisions. (*Steed* v. *Imperial Airlines, supra,* p. 120.) The category of persons eligible to bring wrongful death actions is strictly construed. (*Lewis* v. *Regional Center of the East Bay, supra,* p. 355.)

■    Section 377 provides in pertinent part: "(a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, . . . [¶] (b) For the purposes of subdivision (a), 'heirs' means *only* the following: [¶] (1) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of *Part 2 (commencing with Section 6400) of Division 6 of the Probate Code,* . . . [¶] *Nothing in this subdivision shall be construed to change or modify the definition of 'heirs' under any other provision of law.*" (Italics added.)

Probate Code section 6402 is contained in part 2, division 6, of the Probate Code, and governs intestate succession. Since the decedent died intestate, it is the determinative statute in defining her heirs pursuant to section 377.

Probate Code section 6402 provides that if there is no surviving spouse or issue of the decedent, as in this case, the estate passes first to the decedent's parent, then to the parent's issue, then to the grandparent(s). (Prob. Code, § 6402, subds. (a), (b), (c), (d).) Accordingly, under the intestacy scheme incorporated into section 377, parents have priority over more remote relatives, such as grandparents.

Consequently, appellant, as the decedent's grandparent, cannot maintain her suit, since the right to maintain a wrongful death action here lies exclusively with the decedent's parent, respondent Lyerla.

The issue remains whether appellant's allegations of murder against respondent Lyerla in her complaint have the legal effect, if proven in this action, of disqualifying respondent Lyerla as a section 377 heir.

Appellant's reliance on Probate Code section 250 (hereafter section 250) to support her claim of being the decedent's heir under section 377 is erroneous. Section 377 states that the term "heirs" is restricted only to those persons entitled to succeed according to the provisions of part 2 of division 6 of the Probate Code. Section 250 appears in part 7 of division 2 of the Probate Code.

Section 377 further provides that "[n]othing in this subdivision shall be construed to change or modify the definition of 'heirs' under any other

provision of law." We interpret this to mean that no other statutes other than the specific provisions referred to by section 377 can be used to define the term "heir" for the purpose of bringing a wrongful death action. Neither section 250 or its part and division within the code is mentioned by section 377.

Appellant's contention, that section 377 should be interpreted as incorporating section 250 due to the State's policy of disinheriting killers, is unavailing.

She suggests that we judicially create a wrongful death action based on public policy grounds. ■ This would be contrary to the well established principle that a wrongful death suit is purely a creature of statute and dependent solely on legislative intent. (See *Justus* v. *Atchison* (1977) 19 Cal.3d 564, 575 [139 Cal.Rptr. 97, 565 P.2d 122].) The decision of the legislature as to how far it will extend the right to maintain a wrongful death action is conclusive regardless of the unusual allegations. (*Lewis* v. *Regional Center of the East Bay, supra*, 174 Cal.App.3d 355; *Evans* v. *Shanklin* (1936) 16 Cal.App.2d 358, 362-363 [60 P.2d 554].)

■ Nothing in the language or purpose of section 377 shows that the Legislature intended section 250 to be applicable in determining eligibility to maintain a wrongful death action. ■ The purpose behind the wrongful death statute is to provide compensation for the loss of companionship and other losses resulting from decedent's death. (*Krouse* v. *Graham* (1977) 19 Cal.3d 59, 68-70 [137 Cal.Rptr. 863, 562 P.2d 1022].) ■ Section 250 does not deal with tort compensation, but with the effect of homicide on succession rights. (*Lewis* v. *Regional Center of the East Bay, supra*, 174 Cal.App.3d 354-355; *Mayo* v. *White* (1986) 178 Cal.App.3d 1083, 1090 [224 Cal.Rptr. 373] [Probate Code statutes allowing disclaimer of inheritance rights cannot create substitute heirs under section 377 since they are unrelated to any tort compensation scheme].)

The judgment of dismissal is affirmed.

Gilbert, J., and Yegan, J.

Appellant's petition for review by the Supreme Court was denied February 20, 1992.