Filed 4/14/15  Reinemann v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EREKAH REINEMANN et al., | B255760 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC490830) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Elia Weinbach, Judge.  Affirmed.

Law Offices of Garrotto & Garrotto and Greg W. Garrotto and for Plaintiffs and Appellants.

Collins Collins Muir + Stewart, Melinda W. Ebelhar, Tomas A. Guterres, and Christie Bodnar Swiss for Defendant and Respondent.

_____

Plaintiffs and appellants Erekah Reinemann and Donald Hillman III challenge a trial court order dismissing their lawsuit against the County of Los Angeles (County). Plaintiffs, who are minors, brought this action for damages following the death of their infant sister, Diamond Hillman (Diamond), from Shaken Baby Syndrome at the hands of her presumptive father, Donald Hillman, Jr. (father).

Because plaintiffs lack standing to pursue their claim for wrongful death, we affirm.

## FACTUAL[1] AND PROCEDURAL BACKGROUND

*Factual Background*

According to the second amended complaint (SAC), Diamond was a dependent under the jurisdiction of the Los Angeles County Dependency Court and was under the supervision of the Los Angeles County Department of Children and Family Services (DCFS). Prior to Diamond's birth, plaintiffs had been detained by DCFS and declared dependents of the superior court as a result of sustained allegations of emotional and physical neglect and abuse. After her birth, Diamond's parents (father and Felicia Fitzhugh-Hillman (mother), who is the mother of all three children) and DCFS agreed to a voluntary family maintenance agreement, which allowed her to remain in her parents' home, despite the fact that father had a criminal record that included violent acts and the fact that there was a history of domestic violence.

On or about October 3, 2009,[2] mother told father that she wanted to end their marriage, that she had had an affair, and that Diamond was not his biological daughter. She then left, leaving Diamond in father's care. On October 4, 2009, Diamond was admitted to the hospital with severe bleeding in the brain, consistent with being shaken.

---

[1]    "Because this matter comes to us on demurrer, we take the facts from [plaintiffs' operative] complaint, the allegations of which are deemed true for the limited purpose of determining whether the plaintiff has stated a viable cause of action. [Citation.]" (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

[2]    This date appears in the first amended complaint but was omitted from the SAC.

She died on November 22, 2009.  Father was arrested and charged with murder; he was eventually convicted of willful child endangerment (Pen. Code, § 273a) and abuse (Pen. Code, § 273d).

*Procedural Background*

SAC

Plaintiffs filed suit against the County on August 23, 2012.  The County's demurrers to both the original complaint and first amended complaint were sustained with leave to amend on the grounds that plaintiffs lacked standing.  Plaintiffs filed their SAC, the operative pleading, on June 18, 2013.  The SAC alleges three causes of action: Two claims for wrongful death based on negligence/breach of mandatory duties; and one claim for wrongful death based on negligence/special relationship.

In an effort to comply with prior trial court instructions, plaintiffs attempted to allege standing based upon the fact that mother was "barred from" and/or "disqualified" from maintaining a wrongful death action (1) pursuant to Probate Code sections 250, 253, and 258; and (2) because she "willfully caused or permitted" Diamond's death.  Specifically, the SAC alleges that mother "is barred from, disqualified and cannot maintain an action for wrongful death as an heir of law of [Diamond] pursuant to Probate Code Sections 250, 253 and 258.  The acts that bar her from being an heir at law and proper plaintiff in a wrongful death action on the basis of [Diamond's] death include but are not limited to the following.  [Mother] willfully caused or permitted [Diamond] to be placed in a situation where [Diamond's] person or health would be endangered by leaving [her] in the care of [father] after having told him that she wanted to end their marriage, that she had had an affair, and that [father] was not [Diamond's] father.  These statements were reckless and made specifically to anger and incite [father] and with knowledge of the fact that [father] had a criminal history that included violent domestic acts.  Said actions of [mother] were deliberate, unreasonable and were intentionally in disregard of the safety and welfare of [Diamond] and were a legal cause and contributed to the nonaccidentally inflicted trauma that resulted in [Diamond's] death."

3

Demurrer

The County again demurred, arguing that plaintiffs lacked standing; pursuant to Probate Code section 6402.5, subdivision (b), mother has exclusive priority on a wrongful death claim over plaintiffs, Diamond's siblings. While the trial court had granted plaintiffs leave to amend to allege that mother would not have standing under Code of Civil Procedure section 377.60, subdivision (b), they did not sufficiently allege that mother intentionally and feloniously killed Diamond. In other words, according to the County, they did not establish that mother was disqualified from pursuing a wrongful death cause of action; because mother was not disqualified, plaintiffs—as siblings—lacked standing.

The County also challenged plaintiffs' reliance upon Probate Code sections 250, 253, and 258. Because this case has nothing to do with intestate succession, Probate Code section 250 does not apply. As for Probate Code sections 253 and 258,[3] because plaintiffs did not establish that mother "feloniously and intentionally kill[ed]" Diamond, these two statutes did not apply as well.

Finally, the County asserted that even if plaintiffs could establish standing, the SAC failed to state a claim because they failed to sufficiently allege a statutory cause of action. (Gov. Code, § 815, subd. (a).)

Opposition to Demurrer

Plaintiffs opposed the County's demurrer. They argued that because this case was only at the pleading stage, they were not required to submit any evidence in support of their allegation that mother intentionally and feloniously killed Diamond. Their allegations were sufficient to establish that mother feloniously killed Diamond by inciting father and then leaving the infant in his care. And, according to plaintiffs, these

---

[3] Probate Code section 258 provides: "A person who feloniously and intentionally kills the decedent is not entitled to bring an action for wrongful death of the decedent or to benefit from the action brought by the decedent's personal representative. The persons who may bring an action for wrongful death of the decedent and to benefit from the action are determined as if the killer had predeceased the decedent."

allegations, if proven, would establish that mother violated Penal Code section 273a, subdivision (a),[4] which would put Probate Code section 258 at play.

Moreover, plaintiffs adequately alleged that the County breached its mandatory duties based upon its special relationship with Diamond.

Trial Court Order; Dismissal; Appeal

After entertaining oral argument, the trial court sustained the County's demurrer to the SAC without leave to amend. It found that plaintiffs did "not allege[] facts to support their legal conclusion that . . . mother 'feloniously and intentionally' killed [Diamond] such that [she] is disqualified from standing to sue." Moreover, it rejected plaintiffs' reliance upon Penal Code section 273a, subdivision (a), reasoning that while mother may have violated that statute, Probate Code section 258 required that the killing not only be felonious, but also intentional, and plaintiffs pled no facts to support a finding that mother intended to kill Diamond when she left her with her angry father.

The matter was dismissed, and plaintiffs' timely appeal ensued.

## DISCUSSION

*I. Standard of review*

"Our Supreme Court has set forth the standard of review for ruling on a demurrer dismissal as follows: 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be

---

[4]    Penal Code section 273a, subdivision (a), provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years."

5

affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citations.]" (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043–1044.)

II. *The demurrer was rightly sustained*

"In California, wrongful death actions are statutory in origin and exist '"only so far and in favor of such person as the legislative power may declare."' [Citation.]" (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1118.) "The right to bring an action for wrongful death is wholly statutory in origin and is limited to persons described in Code of Civil Procedure Section 377 [now 377.60]." (*Lewis v. Regional Center of the East Bay* (1985) 174 Cal.App.3d 350, 352–353.) The Court of Appeal does not have the authority to extend the right to maintain a wrongful death action to others, regardless of how compelling the allegations in their favor may be. (*Id*. at p. 355.)

California's wrongful death statute, Code of Civil Procedure section 377.60 provides, in relevant part: "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: [¶] (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." Because Diamond had no spouse, domestic partner, or children, we turn to the Probate Code to determine the right of intestate succession.

Probate Code sections 6401 and 6402 establish the intestate succession scheme. First, property goes to the decedent's spouse or domestic partner and to the decedent's issue. If there is no surviving issue, the intestate estate passes "to the decedent's parent or parents equally." (Prob. Code, § 6402, subd. (b).) Only if a decedent leaves no

6

surviving parent would the intestate estate pass to the decedent's siblings. (Prob. Code, § 6402, subd. (c).)

Here, Diamond has a surviving parent—her mother. Thus, Diamond's siblings (plaintiffs here) have no standing to sue for her wrongful death. (*Mayo v. White* (1986) 178 Cal.App.3d 1083, 1088.)

In urging us to reverse, plaintiffs argue that mother lost her right to sue for Diamond's wrongful death, pursuant to Probate Code section 258. The problem for plaintiffs is that mother did not "intentionally and feloniously" kill Diamond. While mother may have acted recklessly or willfully in creating a situation that led to Diamond's death, that is not enough under the current statutory scheme.

Plaintiffs' claim under title 42 United States Code sections 1983 and 1988 cannot proceed as well. (See *Ward v. San Jose* (9th Cir. 1992) 967 F.2d 280, 284 [rejecting a cognizable liberty interest for siblings and holding that "[n]either the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children"].)

The facts in this case are tragic, and our opinion should not be construed as condoning mother's conduct or what led to Diamond's death. But our hands are tied by this case's procedural posture and the current statutory scheme. We leave this issue to the Legislature to modify the current statutes to expand the available remedies.

7

## DISPOSITION

The order of dismissal is affirmed.  The County is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
     ASHMANN-GERST


We concur:


_____, P. J.
   BOREN


_____, J.
   CHAVEZ

8