Filed 5/2/25  Norried v. Ortiz CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WENDY NORRIED, as Personal Representative, etc., | B326276 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV09440) |
| v. | |
| ERNEST ORTIZ et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark H. Epstein, Judge.  Affirmed.

David Welker for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Dana L. Stenvick, and Nathan J. Novak; Kjar, McKenna & Stockalper, Patrick E. Stockalper, and Molshree Gupta for Defendants and Respondents.

This action, brought by Wendy Norried (Wendy) on behalf of the estate of her brother, Darrell Norried (Darrell), is one of several filed in connection with Darrell's death. The defendants are individuals and institutions who provided medical care to Darrell.[1] The trial court denied Wendy's motion for leave to amend her operative complaint to add a constitutional challenge to the Medical Injury Compensation Reform Act of 1975 (MICRA) and sustained a demurrer to a wrongful death claim asserted by Wendy and another of her brothers, David Welker (David). Later in the litigation, the trial court granted defendants' motion for summary judgment on the remaining medical malpractice claim. We are asked to decide whether the trial court erred in making any of the aforementioned rulings and whether it should have granted Wendy's motion to appoint an expert witness.

## I. BACKGROUND

Darrell was a patient of defendant Venice Family Clinic. Defendant Ortiz, a physician's assistant, treated Darrell on two occasions in July and August 2017, including by prescribing

---

[1] Defendant Venice Family Clinic is affiliated with the University of California. We refer to Venice Family Clinic and the Regents of the University of California collectively as the Clinic. We refer to the Clinic and individual defendants Ernest Ortiz, Coley King, D.O., Blanca Andres, M.D., Karen Lamp, M.D., Margarita Loeza, M.D., Gilmore Chung, M.D., Kayla Pang, and Ricardo Rubio collectively as defendants. Another individual defendant, Jay Lee, M.D., was dismissed from the lawsuit after the trial court entered judgment in favor of the other defendants. Wendy did not notice an appeal from the dismissal, and Dr. Lee is not a party to this appeal.

certain medication. Darrell died of hypertensive heart disease in September 2017.

This lawsuit and two others followed, with David representing the plaintiffs (including himself) in each. We begin with a brief summary of the two other cases.[2]

A. *Related Litigation*

In *Norried v. Ortiz*, Sacramento County Superior Court No. 2020-00291405, David represents himself, Wendy, and Wendy's son, Brayden Witt (Witt), in a putative class action against Ortiz and the Clinic seeking a declaratory judgment that certain provisions of MICRA are unconstitutional. Specifically, the Sacramento case challenges (a) Civil Code section 3333.2's cap on noneconomic damages in an action against a health care provider based on professional negligence and (b) Business and Professions Code section 6146's cap on attorney contingency fees in such actions. The appellate record includes no information about the current status of this litigation.

In *Norried I*, David and Wendy sued the Clinic for negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) based on the Clinic's responses to their requests for medical records. David and Wendy also sought a declaratory judgment that the same MICRA provisions challenged in the Sacramento County action are

---

[2] On our own motion, we take judicial notice of the complaint in *Norried v. Ortiz*, Sacramento County Superior Court No. 2020-00291405 and this court's opinion in *Norried v. Venice Family Clinic* (May 3, 2024, B316566) [nonpub. opn.] (*Norried I*). (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)

unconstitutional. The trial court sustained the Clinic's demurrer without leave to amend, and this court affirmed.

>B. *This Lawsuit*
>1. *The complaint and multiple rounds of demurrers*

The verified original complaint in this action, filed in December 2018, alleged a wrongful death claim on behalf of Nicole Stratman (Stratman), "the natural born daughter of Darrell . . . ." It also alleged a survival action by Stratman predicated on medical malpractice,[3] as well as a claim for negligent infliction of emotional distress brought by David and Witt based on their having witnessed Darrell's death. The claim for negligent infliction of emotional distress, disposed of by demurrer, is not at issue in this appeal.

Following two demurrers sustained with leave to amend, Stratman, David, and Witt moved for leave to file a second amended complaint adding, among other things, a cause of action for declaratory relief raising the same challenge to MICRA asserted in the related litigation. They also sought to remove Stratman as a plaintiff and substitute David and Wendy as plaintiffs for the wrongful death claim and the survival action.

---

[3] "If a person dies having a cause of action for injuries suffered during life, the claim 'survives' to their estate under [Code of Civil Procedure] § 377.20 and may be prosecuted by a duly appointed executor, administrator, or guardian on behalf of the estate." (Ross & Cohen, Cal. Prac. Guide: Probate (The Rutter Group 2024) ¶ 15:281.)

4

An "Updated Motion for Leave to Amend Complaint" proposed removing Stratman as a plaintiff and substituting David as personal representative of Darrell's estate for the wrongful death claim and the survival action.

The trial court partially granted the motion for leave to amend the complaint. As pertinent for our purposes, the trial court denied the request to add the declaratory relief claim. In a tentative ruling, the trial court explained "a declaratory relief action is not proper in this forum at this time" and "note[d] that the issue is going forward in Sacramento."[4] The trial court also denied the proposed removal of Stratman as plaintiff "pending the outcome of the case in Probate Court."

David was appointed the personal representative of Darrell's estate in May 2021. A third amended complaint substituted David in his representative capacity for Stratman with respect to the wrongful death claim and the survival action. Stratman filed a declaration stating she "want[ed] to be removed from this lawsuit as soon as possible" because David

---

[4] The tentative ruling was not expressly incorporated into the trial court's final order. Wendy asks us to take judicial notice of the trial court's order sustaining a demurrer to a similar cause of action in the related Los Angeles Superior Court case because it "contains the lower court's substantive reasoning for not considering the declaratory relief cause of action challenging the constitutionality of certain provisions of [MICRA]." The trial court's ruling in the related case does not inform our review of the trial court's ruling in this case. The request for judicial notice is denied.

misrepresented the financial risks and she did not believe he was qualified to represent her in this matter.

The Clinic and Ortiz demurred to the third amended complaint, arguing, among other things, that the wrongful death cause of action belonged to Darrell's heirs (as opposed to his estate) and claims by any heirs other than Stratman were barred by the statute of limitations. A motion for leave to file a fourth amended complaint sought to "specify" that Darrell's heirs are David and Wendy rather than Stratman. An attached declaration from Richard Welker (Richard)—who is referred to as David's father in the opening brief, but whose relationship to the parties is not discussed in the declaration—states that "Darrell Norried did not at any time live with Nicole Stratman as father and daughter." The trial court granted the motion for leave to file the proposed fourth amended complaint.

The Clinic and Ortiz again demurred to the wrongful death claim, arguing, among other things, that despite the fourth amended complaint's allegation that David and Wendy are Darrell's only heirs, the previous complaints established Stratman is the only proper wrongful death plaintiff.

The trial court sustained the demurrer to the wrongful death claim without leave to amend. The court reasoned it is "far from clear" that a personal representative may assert a wrongful death claim on behalf of an heir who "affirmatively do[es] not want it brought" and emphasized the earlier verified complaints alleged Stratman is Darrell's only heir. The fourth amended complaint's allegation that David and Wendy are Darrell's sole heirs was not adequately explained because, even if it were true that Darrell never lived with Stratman, this would not be sufficient to sever the parent-child relationship and make David

and Wendy Darrell's heirs. Accordingly, the trial court found that "[u]nder the sham pleading doctrine, plaintiff[s] [could not] sidestep a fatal allegation in an earlier complaint by ignoring it in a later complaint, especially where the earlier complaint was verified."

Shortly thereafter, the trial court granted Wendy's motion to amend the fourth amended complaint to reflect Wendy was appointed personal representative of Darrell's estate in place of David. As amended, Ortiz and the Clinic answered the fourth amended complaint in May 2022, and the remaining individual defendants answered the fourth amended complaint a few months later.

### 2. *Summary judgment*

After the various demurrers, all that remained in the fourth amended complaint was a survival claim based on medical negligence. Wendy alleged in the operative complaint that Darrell sought pain treatment at the Clinic on July 25, 2017, and Ortiz prescribed meloxicam. She alleged that meloxicam should be used with caution in patients like Darrell who suffer from hypertension and, further, that meloxicam interfered with another medication prescribed to control Darrell's high blood pressure. The malpractice claim additionally alleged the Clinic "unjustifiably cancelled" a follow-up appointment scheduled for September 11, 2017, "a mere 12 days before [Darrell] died" of hypertensive heart disease. Regarding damages, the complaint alleged Darrell "incurred expenses prior to his death for medical treatment and related expenses."

Defendants moved for summary judgment in August 2022, arguing there was no triable issue of material fact as to the

remaining malpractice claim because the declaration of their expert, Jeffrey Salberg, M.D., established Darrell's treatment met the applicable standard of care. Dr. Salberg stated, among other things, that Ortiz's "instruction of August 25, 2017, to [Darrell] to return in three weeks was within the standard of care,"[5] there were no records reflecting an appointment on September 11, 2017, "[i]t is not below the standard of care for a medical provider to cancel an appointment, and to reschedule it for approximately [two] weeks later," and "[t]he prescription of low-dose meloxicam to treat pain, as needed, did not cause or contribute to [Darrell's] death . . . ."

In response to the summary judgment motion, Wendy filed a motion "to appoint an expert witness under Evidence Code [section] 730," a statute that permits a trial court to appoint an expert when expert evidence "is or may be required . . . by any party to the action . . . ." Wendy asserted she "require[d] expert witness testimony to establish that defendant[ ]s['] behavior was not within the standard of care and caused Darrell's death" and she "ask[ed] the [c]ourt to order that defendant[ ]s pay for the cost of this expert witness . . . ." Wendy argued that "even if paying on a contingency basis were possible, the damages of approximately $20 here would not be adequate to attract an expert."

The trial court denied Wendy's motion. The court rejected defendants' contention "that Evidence Code section 730 does not allow . . . [c]ourt[s] to order the appointment of an expert for a

---

[5]     The Clinic's record of Darrell's visit on August 25, 2017, indicates Darrell was instructed "to schedule a follow-up visit with [Ortiz] for [a] blood pressure check [within] [three] [w]eeks."

8

party," but the court reasoned it was not compelled to grant Wendy's motion and its "discretion in this area is cabined." Analyzing Wendy's request using the three-prong framework applied in cases involving indigent prisoners, the court determined she was not entitled to an appointed expert. The court found that even assuming the estate was "truly indigent," Wendy was not "really" seeking to vindicate a "personal or property interest," and the fact that other indigent medical malpractice plaintiffs are able to hire experts demonstrated that denying the request would not deny the estate "access to the [c]ourts."[6]

Wendy thereafter filed a memorandum of points and authorities in opposition to defendants' motion for summary judgment that conceded it was "likely completely futile without an expert witness" but reiterated her challenges to MICRA and argued the motion must be denied "because it is the fruit of MICRA." She did not engage with Dr. Salberg's declaration or otherwise discuss the merits of defendants' motion.

Wendy did, however, attempt to address defendants' arguments in her accompanying separate statement of material

---

[6] The trial court did suggest alternative means by which Wendy might be able to retain an expert, including by "bring[ing] a [Code of Civil Procedure section] 998 offer. [Wendy] could, for example, offer to settle the remaining cause of action for $15. If defendant[s] refused and [Wendy] recovered even $20 at trial . . . , she might be entitled to expert fees pursuant to that statute. That situation might make it easier for her to attract an expert, especially if her case is strong. And, if defendants did settle for $15 (the more likely option), that would mean that an appealable judgment could issue as to the other causes of action that were dismissed on motion. . . ."

9

facts. Among other things, she indicated the malpractice claim was not "primar[il]y" based on the treatment defendants provided, but rather on their "negligence in failing to honor Darrell's appointment (because it wasn't properly unrecorded [sic])," which "caused Darrell to walk home," suffer "pain," and incur the cost of "a gel pack." She maintained that "[i]t is within the knowledge of a layperson that it is unreasonable to inform a person that an appointment is canceled only after making them travel to the appointment location at the appointed time."

The trial court granted defendants' summary judgment motion based on Dr. Salberg's uncontroverted opinion that Darrell's treatment was within the standard of care. As to Wendy's arguments regarding defendants' alleged failure to keep a scheduled appointment, the trial court emphasized Dr. Salberg's testimony that rescheduling an appointment is within the standard of care. The court also stressed the lack of "any explanation as to how or why Darrell lacked the means to communicate [that he needed a ride home] or how that would be known to defendants."

## II. DISCUSSION

None of Wendy's challenges to the trial court's rulings has merit.

The trial court acted within its discretion in denying the motion for leave to amend the complaint to add a challenge to MICRA because there is no actual controversy warranting a court declaration of rights. Contrary to Wendy's view of the matter, one party's refusal to stipulate to another party's position on an issue is not sufficient to establish an actual controversy.

10

The trial court properly applied the sham pleading doctrine in sustaining defendants' demurrer to the wrongful death cause of action. Wendy's contention that Darrell never lived with Stratman does not explain Wendy's shifting position as to the identity of Darrell's heir(s) because the possibility that Darrell never lived with his daughter does not mean she is not his heir.

The trial court acted within its discretion in denying Wendy's motion to appoint an expert witness at defendants' or the government's expense. Indeed, Wendy's failure to exhaust other viable options is alone sufficient to justify the trial court's decision.

Finally, the trial court properly granted defendants' motion for summary judgment because there is no disputed issue of material fact warranting trial on the malpractice claim. Defendants met their initial burden to show Darrell's treatment was within the applicable standard of care by proffering Dr. Salberg's declaration. Wendy produced no contrary evidence. Her contention, raised only now on appeal, that no expert witness testimony was needed to show defendants negligently caused Darrell to suffer a painful walk home from a canceled appointment rests on the false assumption that medical providers have a duty to protect patients from injury during travel to and from appointments.

> A. *The Trial Court Did Not Err in Denying Wendy's Motion for Leave to Amend the Complaint to Challenge MICRA*

Code of Civil Procedure section 1060 provides, in pertinent part, that "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, *in cases of actual*

11

*controversy* relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties . . . ." (Italics added.)

"'"The 'actual controversy' language in Code of Civil Procedure section 1060 encompasses a *probable* future controversy relating to the legal rights and duties of the parties. [Citation.]" [Citation.] It does not embrace controversies that are "conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court." [Citation.] Thus, while a party may seek declaratory judgment before an actual invasion of rights has occurred, it must still demonstrate that the controversy is justiciable. [Citation.] And to be justiciable, the controversy must be ripe.' [Citation.] "'To determine whether an issue is ripe for review, we evaluate two questions: the fitness of the issue for judicial decision and the hardship that may result from withholding court consideration.'" [Citation.] The two-pronged test for ripeness has also been described as follows: '(1) whether the dispute is sufficiently concrete so that declaratory relief is appropriate; and (2) whether the parties will suffer hardship if judicial consideration is withheld.' [Citation.]" (*Dominguez v. Bonta* (2022) 87 Cal.App.5th 389, 418.)

Wendy contends an actual controversy exists because defendants declined a request to stipulate that MICRA's caps on noneconomic damages and contingency fees are unconstitutional as applied in this case and, "[a]s a result, [she was] not able to retain a qualified attorney." Wendy suggests another attorney would have prevailed on the wrongful death claim and would have defeated summary adjudication of the medical malpractice claim by, among other things, advancing expert witness fees.

Wendy's argument is exceedingly speculative.  The appellate record does not include the information needed to determine whether another attorney could have established David and Wendy's standing as wrongful death plaintiffs, and it is far from clear that Stratman would have elected to proceed with a wrongful death claim with different counsel.  As to the medical malpractice survival claim, we do not have sufficient information to determine whether another attorney would have deemed the case strong enough to advance expert witness fees— much less whether such expert testimony would have made a meaningful difference.

Wendy's argument that an actual controversy is self-evident from David's "inability to handle this complicated case correctly" is similar to the argument of the plaintiffs in *Dominguez, supra*, 87 Cal.App.5th 389 that their attorneys would withdraw from representing them in a medical malpractice case unless the same provisions of MICRA challenged here were declared unconstitutional.  (*Id.* at 394, 412, 414.)  The Court of Appeal in that case held there was no actual controversy because the dispute was "conjectural and hypothetical" and "all manner of speculation" would be required to determine the plaintiffs would suffer hardship in the absence of relief.  (*Id.* at 418-419.)  A "'difference of opinion as to [the] validity [of the challenged statutes]'" did not constitute an actual controversy.  (*Id.* at 419.)  This case comes to us in a different posture—David represented the estate through judgment—but this difference still does not rise to an actual controversy.[7]

_____

[7]	The speculation required to make a retrospective, counterfactual showing that a plaintiff *would not have lost* their case but for MICRA (as in this case) is at least as great as that

13

The trial court therefore appropriately denied the motion for leave to amend based on the lack of an actual controversy. (*D. Cummins Corp. v. United States Fidelity & Guaranty Co.* (2016) 246 Cal.App.4th 1484, 1493-1494 [holding trial court did not abuse its discretion in sustaining a demurrer without leave to amend where the plaintiff, among other things, had not "demonstrated the existence of an 'actual controversy relating to the legal rights and duties' of it and the [defendants]"].)

B. *The Trial Court Properly Sustained the Demurrer to the Wrongful Death Cause of Action*

"The right to recover under a wrongful death theory is entirely statutory, and the wrongful death statutes create a new cause of action that did not exist in the common law. [Citation.] As specified in [Code of Civil Procedure] section 377.60, wrongful death actions may be brought by the heirs of the decedent or a personal representative on behalf of the heirs of the decedent." (*Adams v. Superior Court* (2011) 196 Cal.App.4th 71, 76; accord *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 789, fn. 6 ["The statute limits the right of recovery to a class of persons who, because of their relation to the deceased, are presumed to be injured by his death [citation], and bars claims by persons who are not in the chain of intestate succession"]; *Quiroz v. Seventh Avenue Center* (2006) 140 Cal.App.4th 1256, 1264

---

required to make a forward-looking, hypothetical showing that a plaintiff *might be successful* but for MICRA (as in *Dominguez*). (*Dominguez*, *supra*, at 416 [declining to engage in "rank speculation" as to the probability of various outcomes in medical malpractice litigation where the plaintiffs "ha[d] yet to receive a final award or adjudication (favorable or unfavorable)"].)

14

["Damages awarded to an heir in a wrongful death action are in the nature of compensation for personal injury to the heir"].)

As pertinent here, a wrongful death action may be brought by or on behalf of "[t]he decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." (Code Civ. Proc., § 377.60, subd. (a).) An intestate estate passes to the decedent's siblings only if the decedent leaves no surviving spouse or domestic partner, issue, or parents. (Prob. Code, § 6402, subd. (c).) A demurrer to a wrongful death claim asserted by a plaintiff who is not the decedent's heir is appropriately sustained. (*Marks v. Lyerla* (1991) 1 Cal.App.4th 556, 559, 561 [applying predecessor to Code Civ. Proc., § 377.60]; *Holguin v. Flores* (2004) 122 Cal.App.4th 428, 432, 443.)

The sham pleading doctrine represents an exception to the general rule that factual allegations in a complaint must be taken as true. (*Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 383-384; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425-426; *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343-344.) "Under the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment." (*Deveny*, *supra*, at 425.) "Unless the plaintiff provides a 'plausible' explanation for dropping the harmful allegations (such as the need to correct a mistaken allegation or to clarify ambiguous facts), the trial court will take judicial notice of the harmful allegations and disregard the new

15

and contrary allegations.  [Citation.]*" (Smyth v. Berman* (2019) 31 Cal.App.5th 183, 195.)

The explanation provided here for the discrepancies regarding Darrell's heir(s) is that David learned prior to filing the fourth amended complaint that Darrell never lived with Stratman.  We assume for the sake of argument that this is true.  This fact, however, still does not plausibly explain why Stratman is not named as the sole heir in the fourth amended complaint.  As the trial court observed, there is no basis for Wendy's assertion that Darrell's failure to cohabitate with Stratman disproves the existence of a parent-child relationship for purposes of the wrongful death statute.  To be sure, biological parentage, "without more, is not enough to create wrongful death standing," but the wrongful death statute is construed in light of intestate succession laws and it is not the case that "children with absentee fathers never have standing to sue for a parent's wrongful death."  (*Stennett v. Miller* (2019) 34 Cal.App.5th 284, 296.)

A parent-child relationship exists "between a person and the person's natural parents."  (Prob. Code, § 6450, subd. (a).)  "A natural parent and child relationship is established where that relationship is presumed and not rebutted" under the Uniform Parentage Act.  (Prob. Code, § 6453, subd. (a).)  Cohabitation is only one of several facts that may give rise to such a presumption (Fam. Code, § 7611), and failure to cohabitate does not rebut the presumption (Fam. Code, § 7612).  Wendy did not suggest in the trial court and does not suggest on appeal that the verified allegation that Stratman is "the natural born daughter of Darrell" rested solely on a mistaken assumption that they lived

16

together.[8]  Under these circumstances, the possibility that Darrell did not live with Stratman does not explain the about-face on Stratman's status as Darrell's heir.  The trial court was therefore correct to apply the sham pleading doctrine and to sustain the demurrer to the wrongful death claim on that basis.

> C.      *The Trial Court Acted Within its Discretion in Declining to Appoint an Expert Witness*

Evidence Code section 730 provides, in pertinent part, "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party *may* appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. . . ."  (Italics added.)

We review a trial court's ruling on a request to appoint an expert pursuant to Evidence Code section 730 for abuse of discretion.  (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 477; *In re Marriage of E.U. & J.E.* (2012) 212 Cal.App.4th 1377, 1389; see also *Pink v. Slater* (1955) 131 Cal.App.2d 816, 818 [explaining that the predecessor to Evidence Code section 730 also "use[d] the word 'may,' and the cases hold that the appointment of an expert is committed to the discretion of the court"].)

---

[8]      Among other things, Darrell would be Stratman's presumed natural father if he was married to or attempted to marry Stratman's natural mother within certain dates around Stratman's birth.  (Fam. Code, § 7611, subds. (a)-(c).)

Wendy contends the trial court failed to exercise its discretion because "its ruling . . . indicated that it believed it lacked such discretion." To the contrary, the trial court expressly acknowledged its discretion and carefully considered the relevant circumstances. We need not catalog all factors to be considered by a court weighing whether to appoint an expert because one is dispositive here.[9] The appellate record does not reflect any effort by Wendy to pursue (much less exhaust) other options to obtain expert testimony, including the proposal the trial court reasonably suggested.

Wendy asserts in her opening brief that "[t]his case has never been about money . . . ." But Wendy's determination to see the case through trial without regard to economics—however benevolent her motives—is not a project that defendants or the public are required to subsidize. Indeed, it is the express policy of the Legislature to promote settlement where possible. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1017 ["Section 998 of the Code of Civil Procedure was enacted to encourage the settlement of lawsuits prior to trial"], fn. omitted.) The trial court acted within its discretion in declining to appoint an expert under these circumstances.

---

[9] We do not decide whether the trial court was obligated to analyze—as it did—the factors relevant to determining whether an incarcerated plaintiff is entitled to a court-appointed expert. (*Hulbert v. Cross* (2021) 65 Cal.App.5th 405, 414; *Smith, supra,* 38 Cal.App.5th at 477.)

*D.* *The Trial Court Properly Granted Defendants' Motion*
*for Summary Judgment*

"'The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' [Citation.]" (*San Antonio Regional Hospital v. Superior Court* (2024) 102 Cal.App.5th 346, 350.) "'We review the trial court's [summary judgment] decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' [Citation.]" (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.)

Wendy raises two issues concerning the summary judgment ruling, both of which focus on defendants' follow-up to Darrell's August 25, 2017, appointment. First, Wendy argues Dr. Salberg's declaration is internally inconsistent because he found no record of a follow-up appointment but opined it is not below the standard of care for a medical provider to cancel an appointment and reschedule it for two weeks later. There is no inconsistency here. Dr. Salberg's testimony about canceling and rescheduling an appointment merely assumes the truth of the operative complaint's allegations.

Wendy alternatively contends no expert witness testimony was required to demonstrate the Clinic's cancellation of or failure to record an appointment on September 11, 2017, amounted to "ordinary negligence" and caused Darrell to incur the cost of "a $20 gel pack" after a painful walk home. In effect, Wendy argues for the first time on appeal that a medical provider has a duty to

19

protect patients from injury during travel to or from a canceled appointment. The argument is forfeited (*Vallejo Police Officers Assn. v. City of Vallejo* (2017) 15 Cal.App.5th 601, 621) and lacks merit regardless. The public policy factors identified in *Rowland v. Christian* (1968) 69 Cal.2d 108 weigh decisively against holding a medical provider responsible for a patient's transportation arrangements over which the provider has no control.[10] Indeed, even in this case, the operative complaint alleges Darrell had arranged a ride home from the appointment, but he decided "[i]n frustration" to walk instead. It is not foreseeable that canceling an appointment will lead to the type of injury alleged here.

---

[10] The *Rowland* factors include "foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland*, *supra*, 69 Cal.2d at 113.)

DISPOSITION

The judgment is affirmed.  Defendants are awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.



KIM (D.), J.